## HENRY G. SMITH *vs.* J. FRANKLIN FAXON.

Suffolk.　　March 17, 1892. — June 23, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Surface Water — Artificial Channel — Tenant at Will — Negligence.*

A private landholder has no right to collect water into a definite artificial channel and discharge it upon his neighbor's land; and where the artificial channel is a drain pipe connecting with a public sewer into which surface water flows, a jury is warranted in finding that the landholder was negligent in leaving the drain pipe open, without anything to prevent the flow of water back from the sewer.

An action was brought against a landholder for flooding his neighbor's premises with surface water. The plaintiff was tenant at will of persons who hired the premises of the defendant under a written lease which contained a clause exempting the defendant from liability for loss or damage by fire, "water, or otherwise." *Held*, that, as the action was not brought against the defendant as the owner of the building, the clause did not apply and the action could be maintained.

If the jury, in an action for flooding the plaintiff's premises with surface water, have found by their verdict that the defendant did not use the same care in the construction and management of his cellar as is usual with men of ordinary care and prudence under similar circumstances, the fact that an extraordinary storm contributed to the plaintiff's injury does not exonerate the defendant.

TORT, for flooding the plaintiff's premises with surface water.

At the trial in the Superior Court, before *Dunbar*, J., the plaintiff testified that he was occupying a part of the basement

of the building on Beach Street, in Boston, which extended from
South Street to Utica Street; that he hired the same of Potter
and Watson, as tenant at will; that he occupied the front half of
the basement next to Beach Street, running back about one half
the width of the building, and that his portion was separated
from the rest of the basement by a board partition, the other
part being occupied by Potter and Watson; that he was a dealer
in bottlers' supplies, and kept his stock in the premises in barrels
and bins; that on the night of August 21, 1888, at about a quarter
past nine o'clock, he found that the water was coming into his
basement at the rear of his premises, through the board parti-
tion from Potter and Watson's basement; that he and one Davis
went out to find where the water was coming from, and it was
then raining hard; that he found that a cellar on the land of the
defendant, adjacent to Potter and Watson's basement, on which
the defendant was then erecting a building, and which was not
then covered by a roof, was fast filling up with water; that
the building was then up to the second story; and that he saw
the water bubbling up from the drain pipe in the cellar near
South Street.

The plaintiff offered testimony tending to show that the drain
pipe was open and led to the city sewer in South Street; that
they saw the water pouring into Potter and Watson's cellar from
this cellar under the party wall, which was built upon piles driven
in a soft mud; that the bottom of the excavated lot was about
three feet lower than the bottom of Potter and Watson's cellar;
that the sides and bottom of said cellar were soft and mucky
land; that the next day they saw the water running into and
out of the drain pipe leading to the South Street sewer, at the
time when the tide rose and fell; that at the time of the flooding
of the plaintiff's cellar the water rose in the defendant's cellar to
a depth of six feet; that they measured the height at which the
water rose in the defendant's cellar and in the cellar of Potter and
Watson, and found it eleven inches higher in the defendant's cel-
lar; that at the time the defendant dug his cellar the floor of the
cellar occupied by the plaintiff settled next to the party wall;
that the defendant complained before the flooding that the water
from the hot water heater in the Potter and Watson building per-
colated under the party wall, and ran into his cellar; and that

the morning after the flooding there was a large funnel-shaped hole in the floor beside the party wall.

There was evidence tending to show that there was a wooden sewer two feet square running through South Street from Essex Street from five hundred feet to seven hundred feet north of the defendant's cellar, and eighteen feet from the building line of the lot, the top of which sewer was about two feet below the bottom of the defendant's excavation for the cellar; that such sewer was a part of the sewerage system of the city of Boston, to carry off the surface water and sewage, and ran into the main sewer in Beach Street; that the Beach Street sewer had a direct outlet into tide water, and a further connection with the Federal Street sewer into the intercepting sewer, and thence to the pumping station, from which place it was pumped up to a height above the highest tides and discharged into the sea; that the aforesaid system of sewerage is sufficient to discharge the sewage and the surface water from ordinary use and all ordinary storms; that in case of an extraordinary fall of water, so great that the intercepting sewer cannot carry it off, the entrance into the intercepting sewer closes and the surface water is carried through the extension of the Federal Street sewer to the ocean, and is there discharged; that at the outlet of the Federal Street sewer is a tide gate, which shuts all or substantially all of the tide water out of that sewer, so that the sewer in South Street would not contain any tide water; that as the tide rose it would close the tide gate and keep it closed until the surface water seeking to discharge through said sewer rose higher than the tide, when it would open the said tide gate and flow out into the ocean; that the height of water in the sewer at such times was consequently regulated by the height of the tide; that there were two catch-basins to conduct the surface water into this sewer in South Street, one at the upper end of Essex Street and one at Tufts Street just above the defendant's premises; that in order to drain off the surface water, and the water that so came into the cellar from springs, and by percolating through the soil, so that the cellar would not be filled thereby, the defendant, in June or July, 1887, put in a six-inch drain pipe from the cellar to the sewer in South Street, and properly connected it therewith, the top of the drain pipe being just about its own size

below the bottom of the cellar, with a pitch of two feet to the sewer; that the drain pipe and excavation were left in, and were in the usual and proper condition; that the drain pipe so remained open until and on the night in question; that until the night of August 21, 1888, no water had ever been known to come through the drain pipe into the cellar, but that it had during all the time properly drained the cellar; that the bottom of the defendant's cellar at that time was four feet and six inches below the basement floor of the plaintiff, or of the Potter and Watson building, upon which the damage by water was claimed; that, in digging his cellar, the defendant, being then the owner of the Potter and Watson building, took out the foundation of the wall thereof adjoining his new building, and cut off the old piles three feet, and rebuilt the foundation with granite laid in cement three feet, and brick above to the old wall; that, adjoining the wall on the lot in question, another wall was built for the new building, under which the piles were cut about four feet below the bottom of the cellar in question, on top of which was cut granite up to the bottom of the cellar, and above that a twenty-inch brick wall; and that earth was filled in around the piles under both of said walls, in the usual manner, up to the stone laid on the piles.

There was also evidence that there was no filling in of earth in the cellar or about the walls until after the flooding; that the walls, and the earth about and under the same where piles were driven, were negligently left in a dangerous and improper condition, and that the defendant's workmen had made changes in the wall of the Potter and Watson building, and had negligently left that wall in an improper condition; and that the water had there passed through into the plaintiff's premises. There was evidence, much of which was contradicted, tending to show that the street in South Street in front of this cellar was lower than it was either north or south of it, and that neither the sidewalk nor edgestones were laid on South Street or Utica Street; that more or less building material was lying in front of the cellar and extending into the street, guarded by a fence run out from the building into the street at both ends, and that from both streets the surface water was free to flow into the cellar; and that on the next morning after the flooding there was unmistakable evidence that water

had, during the rain, flowed from both of the streets over the walls into the cellar, in large quantities, and that it took all of the next day for the water in the cellar to discharge itself through the drain pipe, and through the ground.

The defendant introduced in evidence the lease of the premises called the Potter and Watson building, in which the damage was alleged to have been,— under which Potter and Watson, and the plaintiff as their tenant at will, held, — from the defendant and William H. Faxon to Potter and Watson. This lease contained a clause exempting the defendant from liability for loss or damage by fire, " water, or otherwise."

In addition to other requests which were complied with, the defendant requested the court to instruct the jury:

" First. That the defendant had the right to make the excavation upon his own land testified to ; that he was under no obligation to prevent surface water from accumulating therein upon his own land, and thence flowing into the cellar of the plaintiff ; and if the water complained of was surface water, the plaintiff is not entitled to recover. . . .

" Fifth. That if the water which came into the defendant's cellar was surface water, caused by a heavy rain, that flowed into the sewer constructed by the city in its street for the purpose of carrying off such surface water, and thence through a drain which the defendant had connected with said sewer from his said cellar, for the purpose of draining the same into said cellar, and thence ran into the plaintiff's premises through or under the wall, the plaintiff cannot recover.

" Sixth. That if the intervening wall between the plaintiff's and defendant's premises was properly constructed for the purposes for which it was intended, that is all that the defendant can be required to do, and he is not liable on account of surface water that is collected in his cellar running or percolating through or under the same into the defendant's cellar. . . .

" Eighth. That the plaintiff being a tenant at will of Potter and Watson, who are tenants of the defendant under a lease in writing, the plaintiff's rights are limited by the agreements and conditions in said lease, and that under the provisions and agreements in said lease the plaintiff cannot recover in this action.

" Ninth. That upon all the evidence in this case the plaintiff is not entitled to recover, and the verdict must be for the defendant."

The judge refused so to rule, and instructed the jury that the defendant had the right to make the excavation for the cellar; that he would not be liable for any injury resulting from the condition of the wall unless the same were due to his negligence, and explained what would constitute such negligence, to which instructions no exception was taken ; and further, as to the first, fifth, and sixth requests, instructed the jury as follows:

" There is another consideration which comes into this case, and that is with reference to surface water. There was considerable evidence from the engineer who is in the sewer department of the city of Boston with regard to the construction of these sewers and their capacity, the manner in which they are emptied, and the manner in which water is prevented from coming into the sewers from the sea. His testimony tended to show that, when the tide rises to a certain point, the tide gates which are at the mouths of the sewers discharging into the sea are closed by the pressure of the water; that they do not open until the pressure of the water in the sewer is greater than the pressure of the tide upon the mouth of the sewer ; and that the water in the sewer, therefore, must be higher than the tide before the gates will open and let any out. And the defendant says that this was all surface water, necessarily, because that evidence is uncontroverted; that it could not have been sea water upon that statement of the civil engineer, and upon his further statement that if there was any sea water in there, it must have come in by percolation, and would have been a matter of not sufficient consequence to consider; and that he is not liable for surface water which comes upon his land and passes upon the land of another, nor for surface water which passes directly from his land upon the land of another.

" And as a general statement of a general principle that is true. If you own a piece of land, and your next door neighbor owns another piece of land, and yours is higher than his, you are not responsible, because when the rain falls upon your land, or the snow gathers upon it and melts, it discharges upon your neighbor's land. Neither would you be responsible

if you owned the lower piece and your neighbor owned the higher, and the water had been accustomed from time immemorial to flow from the surface of his land upon the surface of yours, if you built along the line upon your own land, within your own limits, a barrier which prevented it from flowing upon your land. But if you, owning the upper piece of land, construct an artificial channel, and by means of that collect the surface water upon your land and discharge it upon your neighbor's land in a different place and in greater volume than it had been accustomed theretofore to flow, then you would be liable for such an act as that, if it cause injury to your neighbor.

" And that is the principle, as I understand, upon which the plaintiff relies in this case. He says that you should find that this was surface water, that there was nothing else in it, that it did not come in the natural and ordinary manner, but that it came in through a drain pipe, which discharged it in greater quantities than would otherwise have accumulated there, and in a manner different from that in which it would otherwise have accumulated, and thereby enabled the water to pass through the wall of the building in which he was and cause him injury.

" The principle I have already stated to you. A man is not liable for surface water which comes in in the ordinary way, whether his land be at a level surface or whether it be dug below the level surface. If the water in this case, for instance, came in from the street, poured over the embankment into this cellar, purely surface water coming in in a natural way and not in any artificial channel, then the defendant is not responsible for the presence of that water in the cellar; but if some of it came in through a drain pipe in the manner in which the plaintiff claims it did, and came into the cellar in greater quantities than it would otherwise have come, and it caused this injury to the plaintiff because of that, — if that was the proximate and efficient cause of the injury, — then although it first passed upon the defendant's land before going to the place where it injured the plaintiff, the defendant might be held liable if the other elements in the case are proven to your satisfaction by a fair preponderance of the evidence."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*R. Lund & W. E. Jewell*, for the defendant.

*E. O. Achorn*, for the plaintiff.

LATHROP, J.   As to the first request for rulings, the jury were instructed that the defendant had the right to make the excavation upon his own land.   They were further instructed, that a person was not generally liable for surface water collecting on his land and flowing on to the land of another; that the defendant was not liable if the injury was caused by surface water pouring over from the street into the cellar; but that he would be liable if the water came in through a drain pipe which discharged it in greater quantities than would otherwise have accumulated in the cellar, and in a different manner; and that, if that was the proximate and efficient cause of the injury, then, although the water first passed upon the defendant's land before going to the place where it first injured the plaintiff, the defendant might be liable, if the other elements in the case were proven.

That a private landholder has no right to collect water into a definite artificial channel and discharge it upon his neighbor's land, is well settled.   See *Bates* v. *Westborough*, 151 Mass. 174, 181, and cases cited.   The artificial channel in the case at bar was a drain pipe connecting with a public sewer into which surface water flowed.   The right of the defendant to build the drain was not disputed; but the plaintiff's contention was, that the defendant was negligent in leaving this drain open, without anything to prevent the flow of water back from the sewer. The jury were fully instructed upon this point; and by their verdict they have found negligence on the part of the defendant. We are of opinion that the first instruction requested, so far as it was not given, was properly refused.

The second, third, fourth, and seventh requests for instructions were given.

The fifth request is disposed of by what we have said as to the first.

The sixth request was properly refused.   So far as it relates to surface water, we have already considered it.   So far as it relates to the building of the wall, it omits the element of negligence, which we will consider later.

The eighth request relates to the facts that the plaintiff was

a tenant at will of Potter and Watson, who hired the building
where the plaintiff did business of the defendant, and that the
defendant's lease to Potter and Watson contained a clause
exempting the defendant from liability for loss or damage by
fire, " water, or otherwise." A similar clause in a lease was
construed in *Fera* v. *Child*, 115 Mass. 32; and it was held that
under it the lessor was not liable for damage done to the lessee's
goods by the bursting of a water pipe in a part of the building
not included in the lease. But in the case at bar the action is
not brought against the defendant as the owner of the building,
but for a tort committed by him as the owner of an adjoining
lot of land; and we are of opinion that the clause in question
does not apply.

The ninth instruction requested was, that, upon all the evi-
dence, the plaintiff was not entitled to recover. We need not
consider whether the plaintiff could maintain his action, on the
doctrine of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, aside from
evidence of negligence on the part of the defendant. See *Snow*
v. *Whitehead*, 27 Ch. D. 588. The plaintiff's declaration charges
negligence, and the case was tried upon this issue; and the jury
were instructed that, unless the plaintiff proved that the defend-
ant was negligent, the verdict must be for the defendant. To
show negligence, the plaintiff relied upon two facts, about which
there does not seem to be any dispute. The first was that the
pipe leading from the bottom of the cellar to the sewer was so
constructed that there was nothing to prevent water from flow-
ing from the sewer into the cellar. The other was, that the
defendant, in digging his cellar, took out the foundation of the
Potter and Watson building, cut off the old piles three feet,
rebuilt the foundation with granite laid in cement, built the new
wall adjoining, filled in the walls about the piles, but did not
fill in the earth about the foundations until after the flooding.
There was also evidence that the walls and earth were negli-
gently left in a dangerous and improper condition; that changes
had been made in the wall of the Potter and Watson building;
that that wall had been negligently left in an improper condi-
tion; and that the water had there passed through into the
plaintiff's premises.

We cannot say that there was no evidence for the considera-

tion of the jury of negligence on the part of the defendant. If such negligence existed, and the jury have found by their verdict that the defendant did not use the same care in the construction and management of his cellar as is usual with men of ordinary care and prudence, under similar circumstances, the fact that an extraordinary storm contributed to the plaintiff's injury does not exonerate the defendant. *Salisbury* v. *Herchenroder*, 106 Mass. 458, and cases cited. *Exceptions overruled.*