MARGARET O'BRIEN & others *vs.* CITY OF WORCESTER.

Worcester.    October 5, 1898. — January 6, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*City — Sewer — Law and Fact — Action — Contributory Negligence — Damages.*

A city, in discontinuing a sewer upon building a new one, is bound to proceed with due regard to the fact that the premises of a person are connected with and drain into the old sewer, and if it fails to do so it is liable for the damages resulting to him therefrom, unless there was contributory negligence on his part.

Whether the owner and occupant of premises connected with a sewer in a city knew or ought to have known that a new sewer was being constructed in the street, and was negligent in not connecting his premises with it, are questions of fact for the jury, in an action against the city for damages caused by walling up the old sewer.

If a person whose premises in a city are connected with a public sewer knew, or by the exercise of reasonable care ought to have known, that a new sewer was being built and that the old sewer was walled up, and negligently omitted to connect his premises with the new sewer, or failed to take such measures of prevention or precaution as ordinary prudence would have required, he cannot recover against the city for any damages to which such negligence contributed.

Where a sewer in a city is discontinued and a new one built, if the city walls up the old sewer, causing the water and sewage to set back upon premises connected with it, the owner is entitled to recover for the injury to his estate, including loss of rents and reasonable compensation for his trouble and expense in respect to his property, unless and except to the extent to which by reasonable care and precaution he could have guarded against such injury; but he cannot recover the expense of connecting his premises with the new sewer.

In a joint action by the owners of an estate against a city for injuries caused, upon building a new sewer, by the walling up of an old one with which the estate was connected, they cannot recover for injuries to their health.

TORT, for injuries caused to the plaintiffs' property and health, by the alleged negligence of the defendant in the construction of a sewer. Trial in the Superior Court, before *Gaskill*, J., who allowed. exceptions tendered by both parties, those of the plaintiffs being in substance as follows.

In 1890, the plaintiffs were the owners and occupants of a lot of land and house thereon on Bradley Street in the defendant city. The house was duly connected with the city sewer then existing in Bradley Street when the plaintiffs came into possession of it in 1889, and the drainage was good.

It appeared in evidence that in December, 1890, the city constructed a new sewer in Bradley Street past the plaintiffs' property, under a proper order of the city council, parallel with and about four feet distant from the old one, the bottom of the new sewer being about two feet higher than the bed of the old one where that was lowest. While constructing the new sewer the city connected all the houses on the street with it, except the plaintiffs' estate and one other.

There was no evidence that the plaintiffs knew that a new sewer was being constructed, or that their house was not connected, except what inference may be drawn from the fact of the work being done; and the plaintiff O'Brien testified that she did not know what had been done, or what the trouble with her cellar was, until the same was discovered in 1894.

Soon after the construction of the new sewer, the plaintiffs began to have trouble with their cellar. It grew wet and foul-smelling. At times, after a rain, the water would reach the depth of eighteen inches. This accumulation was slimy, and had the appearance of being sewage. The plaintiffs repeatedly went to the city board of health, and to the office of the superintendent of sewers for the city, but no relief was afforded. The condition became such that the tenants in the house moved out, and the plaintiff O'Brien, who has a dower interest, and is mother and also guardian of the other plaintiffs, who are minors, testified that the tenants gave as a reason for moving the foul condition of the cellar.

The same witness testified that applicants for tenements refused to move in on account of the condition of the cellar; that the loss from the tenements standing idle was about $144;

that it was so damp in the house that the sheets in the beds became damp, and a mould formed on things which were allowed to stand; that her health became very poor; that her physician told her she must move away from the place, and that she would die if she continued to live over such a cellar; that she paid out in doctor's bills between thirty and forty dollars; and that while this condition existed two of her children were taken sick with scarlet fever and died, and two children of the tenants died, one with diphtheria.

A physician was called as a witness, and testified that he attended the plaintiff O'Brien in her illness; that he advised her against living over such a bad cellar; that such a condition of the cellar as had been testified to would aggravate such diseases as scarlet fever and diphtheria, and render them more likely to be fatal in result; and that her condition was such as might have been caused by living over a filthy cellar, and he knew of no other reason for her condition.

In their efforts to dry the cellar, the plaintiffs had plumbers raise the water closets and lay drain pipes through the cellar at a cost of about forty dollars, but it did no good. The cellar steadily became worse, until in 1894 one Knowles, a drainage and sewerage contractor, was called in.

Knowles testified that he found the connection with the old sewer all in order, but that the water would not run off through the pipes into the sewer; that after considerable digging, he found that the house had never been connected with the new sewer; that upon making the connection, the water ran into it, and the cellar became dry and all right; and that the cause of the plaintiffs' cellar being in such a condition was that the sewage from the house could not run off properly, owing to the fact that the city walled up the outlet of the old sewer at some time after the construction of the new sewer.

The plaintiffs claimed no damages except such as resulted after the walling up. The sewage set back in the drains leaked through into the surrounding earth, and was washed into the cellar by rains until the cellar bottom, walls, and surrounding earth became filled with the filth. When Knowles commenced work there were about eighteen inches of dirty water standing in the cellar. His bill for making the connection with the new sewer was $128, which included also some interior plumbing.

At the close of the evidence, the judge ruled that the plaintiffs could maintain the action, and recover the reasonable expense of connecting their estate with the new sewer. It was agreed by the parties that, under this ruling, a verdict should be rendered for the plaintiffs in the sum of $100, which was done; and the plaintiffs alleged exceptions.

The exceptions tendered by the defendant were in substance as follows.

There was evidence tending to show that in December, 1882, a sewer was properly constructed in Bradley Street under an order of the city council; that the then owner of the premises, later owned by the plaintiffs, signed, before connecting the premises with the sewer, an instrument applying for permission to lay a service drain from the premises to the public sewer, and agreeing to save the city harmless from any damage consequent upon the doing of the work, and to conform to the rules and regulations relating to the laying of drains adopted by the city council; that the land in and around Bradley Street was very boggy, and covered to a depth of sixty or seventy feet with mud and soft material; that in 1891, by reason of use and the construction of a large drop forge establishment in the vicinity and the increased heavy travel over the street, the sewer had settled from one to two feet in various places; that opposite the house of the plaintiffs it had settled about one foot, and the plaintiffs' house and its foundations had also settled about one foot below what it was at the time of the construction of the first sewer, in 1882; that in 1891 the city council adopted an order for the reconstruction of the sewer; that at this time the sewer was performing its work, but required frequent cleanings, and because of its uneven condition it was deemed best to have it reconstructed; that under that order, and in the months of November and December, 1891, a new sewer was constructed of the same level as the original sewer, and a foot or two away from it; that at that time the city constructed an entrance to the sewer opposite the house of the plaintiffs, and laid a pipe from the new sewer at the lowest grade at which it could be constructed, and dug a trench to within about three feet of the cellar wall of the plaintiffs' house, and the land of the plaintiffs was dug up for this purpose; that at the same time an

engineer of the defendant made measurements and took levels in the cellar of the plaintiffs' house, and determined therefrom that, by reason of the settling of the house and the plumbing connected therewith, it was impossible to connect the plumbing as it then was with the new sewer; that the end of the pipe running into the new sewer, which had been laid from the sewer to within three feet of the cellar wall of the plaintiffs' house was thereupon covered with a board in order that it might not fill up, and the trench recovered; that later, when this trench was connected with the house by Knowles, the house was drained and the trouble removed; that the new sewer was constructed upon piles, and in its construction an engine and other necessary and heavy appliances for driving the piles were in the street for a considerable distance both sides of the plaintiffs' house, and for a period of two or three weeks; that also there was in the street an excavator, which was also operated by an engine, and consisted of a track and a framework several feet above the ground on the top of which ran a pulley carrying buckets which were filled with earth where the digging was going on, and were then run back to the other end of the trench where the filling was being made; that the plaintiff O'Brien knew of the work going on in the street, and lived upon the premises all the time, and saw the engines in operation there; and that the work of constructing the new sewer was properly done.

There were also introduced the following regulations of the board of health of the defendant city, duly adopted in accordance with authority conferred on it by law:

" Rule 1. Every tenement in said city used as a dwelling-house shall be furnished with sufficient drain, underground, to carry off the waste water into a common sewer or reservoir. . . .

" Rule 7. The owners or occupants of estates abutting on a public sewer shall cause such estates to be connected by proper drains with such public sewer."

The evidence also tended to show that, some time after the new sewer was constructed, the city walled up the old sewer without the knowledge of the plaintiffs, and without notice to them; and that, in consequence, the water and sewage set back into the plaintiffs' cellar to the damage of their estate.

The judge ruled that, upon the foregoing evidence, the plain-

tiffs could maintain their action and recover the reasonable expense of connecting their estate with the new sewer, which was agreed to be one hundred dollars ; and the defendant alleged exceptions.

*A. P. Rugg*, for the defendant.

*C. W. Wood & C. H. Wood*, for the plaintiffs.

MORTON, J.  The defendant was under no legal obligation to the plaintiffs to build or maintain a sewer in Bradley Street.  It had a right to discontinue the old sewer and to build a new one, and it was not required to connect the premises of the plaintiffs with the new sewer.  Under the regulations of the board of health, which are said in the defendant's exceptions to have been duly adopted in accordance with authority conferred on the defendant by law, it belonged to the plaintiffs to do that.  But in discontinuing the old sewer, the defendant was bound to proceed with due regard to the fact that the premises of the plaintiffs were connected with and drained into it, and if it failed to do so, it was liable to the plaintiffs for the damages resulting to them therefrom, unless there was contributory negligence on their part.  It is well settled in this Commonwealth that towns and cities are liable for damages caused by their negligence, or that of their servants or agents, in constructing or maintaining sewers, though not for any damages resulting from any defect in the plan or system on which the sewers are built.  *Child* v. *Boston*, 4 Allen, 41.  *Emery* v. *Lowell*, 104 Mass. 13.  *Merrifield* v. *Worcester*, 110 Mass. 216, 221.  *Bates* v. *Westborough*, 151 Mass. 174.  *Allen* v. *Boston*, 159 Mass. 324.

There was testimony tending to show that, " some time after the new sewer was constructed, the city walled up the old sewer without the knowledge of the plaintiffs, and without notice to them," and that the effect of this was to cause the water and sewage to set back into the cellar of the plaintiffs, and to lead to the damages and injuries complained of.  The city had no right to do this without taking reasonable precautions to see that the plaintiffs were not injured thereby.  The city contends that the plaintiffs knew, or ought to have known, that a new sewer was being constructed, and that they were negligent in not connecting their premises with it.  These were questions of fact for the jury.  If the plaintiffs knew, or by the exercise of rea-

sonable care ought to have known, that a new sewer was being built, and that the old sewer was walled up, and negligently omitted to connect their premises with the new sewer, or failed to take such measures of prevention and precaution as ordinary prudence would have required, they cannot recover for any damages to which such negligence contributed. The defendant further contends that the sewer was walled up by its employees without its authority. But each bill of exceptions states that the sewer was walled up by the city. The defendant also insists that the plaintiffs violated the rules of the board of health in not entering the new sewer, and for that reason cannot recover. But no rule of the board of health required them, so far as appears, to enter the new sewer. When the old sewer was constructed the predecessors in title of the plaintiffs entered it, and the premises continued to be connected with it till the plaintiffs discovered, as they asserted, that it had been walled up and a new sewer had been built, when they entered the new sewer.

The remaining questions relate to damages. The court ruled that the action could be maintained, but ruled also, in effect, that the plaintiffs could only recover as damages the reasonable expense of connecting their estate with the new sewer, which was agreed to be one hundred dollars, and a verdict for the plaintiffs was rendered for that amount. We think that this was error. If the plaintiffs were entitled to recover at all, they were entitled to recover all the damages to their estate that were the natural and proximate results of the act complained of, and such as reasonably might be supposed to have been within the contemplation of the parties, if, at the time of the doing of the act, they had taken thought of the consequences likely to ensue. *Swift River Co.* v. *Fitchburg Railroad,* 169 Mass. 326. Applying the rule thus laid down, we think that the plaintiffs were entitled to recover for injury to the real estate, including loss of rents and reasonable compensation for their trouble and expense in respect to their property, unless and except to the extent to which by reasonable care and precaution they could have guarded against such injury. See *French* v. *Connecticut River Lumber Co.* 145 Mass. 261.

We do not think that the plaintiffs were entitled to recover the expense of connecting their premises with the new sewer.

As already observed, it belonged to the plaintiffs to make the connection. We do not see how the fact, if it was a fact, that the defendant as against the plaintiffs may have walled up the old sewer wrongfully, relieved the plaintiffs from the expense of entering the new sewer, and cast it upon the defendant.

This is a joint action by the plaintiffs as owners of the real estate, and we do not see how they can recover in this action for injuries to their health.

The result is, that the exceptions of both parties must be sustained, and it is so ordered. *Exceptions sustained.*