DAVID D. NYE *vs.* HOWARD L. SWIFT & another.

Barnstable. November 16, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING & SHELDON, JJ.

*Easement. Water Rights. Cranberry Bog.*

A grant by deed of the right to raise the water of a pond fed by a stream for the purpose of flowing the cranberry bog of the grantee adjoining the stream above the pond does not give the grantee the right to use the pond and the bog of the grantor adjoining it as a reservoir to hold water to be used afterwards by the grantee in flowing his bog.

Although R. L. c. 196, § 39, provides that the provisions of that chapter, commonly called the mill act, shall apply, so far as applicable, to a dam erected and maintained across a stream to flow land for the cultivation and growth of the cranberry, this does not make a petition under § 4 of that chapter the sole or proper remedy of one whose cranberry bog adjoining a pond is injured by the owner of another bog, which adjoins the stream feeding the pond, from unlawfully storing water on the lower bog by means of dams.

TORT for unlawfully flowing the land of the plaintiff in the manner stated in the opinion. Writ dated August 14, 1896.

In the Superior Court the case was referred to George F. Tucker, Esquire, as auditor. Later the case was heard by *White,* J. upon the auditor's report which was the only evidence presented. The material facts shown by the report are stated in the opinion. The defendants asked the judge to rule that on those facts the action could not be maintained. The judge refused to make this ruling, and found for the plaintiff, assessing damages in the sum of $944.06. The defendants alleged exceptions.

The following is a copy of a plan annexed to the auditor's report, which is referred to in the opinion:

*H. P. Harriman*, for the defendants.

*J. H. Beale, Jr.*, for the plaintiff.

SHELDON, J. This is an action of tort brought to recover damages for the flowing of the plaintiff's land by the defendants. At the trial in the Superior Court, the only evidence offered was the report of an auditor; and the only question

which comes before us is whether upon the facts stated in that report the action can be maintained.

It appears from the report that in 1895 the defendants owned cranberry bogs upon each side of a stream just above a pond into which the stream ran, and the plaintiff owned a bog immediately below one of the defendants' bogs situated on one side of the pond, and another bog on the other side of the pond and further down. Below both of the plaintiff's bogs, the water flowed from the pond through a narrow outlet into the ocean. The defendants' title to their bogs came partly through a warranty deed given by the plaintiff's father, which granted " the privilege of raising the pond below sufficient for flowing their bog when made," and partly through a warranty deed from the plaintiff which granted the privilege " to raise the water and flow their bog." Both of these deeds were given in 1881. The different bogs in question and the pond and stream are shown on the plan which was annexed to the auditor's report. The defendants' bogs are sixteen to eighteen inches higher than the plaintiff's bog.

In 1881 or 1882 the lower dike shown on the plan was erected across the outlet of the pond, on land now owned by the defendants ; and it was admitted that the defendants had the right to flow their bogs by using this lower dike or dam, even though by such flowing the plaintiff's bog would be covered with water. It is necessary that cranberry bogs should be flowed in the spring or early summer to destroy insects called fire-worms, which unless destroyed are fatal to the growth of the cranberry. Until the early part of 1895 the defendants flowed their bogs by means of this lower dike or dam ; but the defendants then erected the upper dike shown upon the plan, just above the plaintiff's first bog, and a pumping station upon the dike. Water was held upon the defendants' bog above this upper dike by means thereof until May 20, 1895, when the defendants pumped it by a steam pump into the pond below, so flowing the plaintiff's bog, where it was held by closing the gates at both dikes until June 7 next following, when the water was pumped back upon the defendants' bogs above the upper dike, and upon June 20 the defendants again pumped the water from their bogs above the upper dike into the pond below, and again pumped the water back upon the defendants' bogs on the twenty-third day of June, after

which they opened the gates at both the upper and lower dikes and allowed.the water to flow unobstructed into the sea. The effect of these operations, though highly beneficial to the defendants' bogs, was to do great injury to the plaintiff's bog, and the material question involved in the case is whether the defendants, having under their deeds the right to raise the water to flow their bogs, had the right to adopt this method of accomplishing that result.

It appeared that to raise the water sufficiently to flow the defendants' bog by using the lower dike alone without the aid of the steam pump and the upper dike, it would have been necessary to keep the water on the plaintiff's bog a longer time than it was kept there by the plan adopted, and that the place where the plaintiff's bog was constructed was a part of the bed of the pond at the time of the giving of the deeds by the plaintiff and his father in 1881, and had been drained and so had become available for growing cranberries in 1891 only by reason of the defendants having lowered the water of the pond by lowering the outlet at their lower dike. It also appeared that it is impossible to flow properly the defendants' bogs by means of the lower dike alone.

It will be observed that the plaintiff's complaint is not that the defendants have raised the water and flowed his bog for the purpose of flowing their bog; for this it is conceded that the defendants have the right to do. It is that the defendants, having raised the water upon their bogs, have then discharged it into the pond and held it there between the upper and lower dikes for some days, then pumped the water back from the pond upon their bogs and held it there, and so continued, practically treating the pond and the plaintiff's bog as a reservoir, and using the lower dike for the purpose, not of raising water to flow their own bogs, but of holding the water upon the plaintiff's bog for their future use. This is what the auditor has found that they have done; and we do not think it necessary to cite authorities to show that they have not the right to do this under the guise of raising the water to flow their own bogs.

It is a general rule that an action will lie against one who collects mere surface water into a definite artificial channel and discharges it upon his neighbor's land. *Fitzpatrick* v. *Welch,*

174 Mass. 486. *Smith* v. *Faxon,* 156 Mass. 589. Doubtless indeed the defendants, after they had rightfully raised the water to flow their bogs, would not be under any liability to the plaintiff for allowing this water to escape by the stream, even though the natural flow of the stream might be thereby materially increased and some damage thereby caused to the plaintiff; but we do not see how this principle gives them any right, after having thus used the water, to impound it upon the plaintiff's premises for their own future use. We are of opinion that the defendants had no right to adopt this method of flowing the plaintiff's land. An easement granted for one purpose cannot at will of the dominant owner be converted into an easement for a different purpose. *Jennison* v. *Walker,* 11 Gray, 423. *Allan* v. *Gomme,* 11 Ad. & El. 759.

But the defendants contend that they had a right to erect and maintain these dams under the provisions of R. L. c. 196, § 39, and that no action can be maintained against them at common law for any damages occasioned thereby, because the sole remedy for the recovery of any such damages is by petition under § 4 of the same chapter. But this contention does not seem to us to be well founded. It is settled that the general provisions of c. 196 of the Revised Laws with reference to mills and mill dams are to be applied, so far as may be, to dams erected for cranberry culture. *Howes* v. *Grush,* 131 Mass. 207. *Blackwell* v. *Phinney,* 126 Mass. 458. *Hinckley* v. *Nickerson,* 117 Mass. 213. *Turner* v. *Nye,* 154 Mass. 579, 582. And it has been decided that these statutes are to be applied to continuous and descending streams of water, to the raising of a head of water either for the operation of a mill or for the creation of a pond. *Thompson* v. *Moore,* 2 Allen, 350. *Murdock* v. *Stickney,* 8 Cush. 113. For such injuries as are here complained of, an action at law seems to be the proper remedy. *Thompson* v. *Moore, ubi supra. Brigham* v. *Wheeler,* 12 Allen, 89. *Bates* v. *Weymouth Iron Co.* 8 Cush. 548. *Eames* v. *New England Worsted Co.* 11 Met. 570.

Nor is it material that if the defendants had flowed their bogs in the manner allowed by their deeds, the damage caused to the plaintiff might have been greater than that caused by their wrongful acts.

Accordingly, the entry must be

*Exceptions overruled.*