JAMES H. DEYO & another *vs.* ATHOL HOUSING AUTHORITY (and a companion case[1]).

Worcester. September 25, 1956. — February 13, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Water. Real Property*, Water. *Practice, Civil*, Auditor: findings; New trial.

A landowner who constructed a drainage trench across his land ending at a catch basin and underground pipe near adjoining land was liable to the owner of the adjoining land for damage thereto resulting when water overflowed the catch basin and either flowed onto or percolated into the adjoining land. [462]

[1] The companion case is by the same plaintiffs against the town of Athol.

Neither a housing authority which constructed a road upon its land in
a town, retaining title to a sidewalk and a grass strip between it and
adjacent land when the road was established as a public town way,
nor the town, was liable to the owner of the adjacent land for damage
thereto from water retained thereon as a result of blocking of the
previous drainage thereof by the fill used in the construction of the
road, where no right of the adjacent landowner to drain over the filled
land appeared. [462]

On the record of an action heard by an auditor whose findings were to be
final, the action was remanded to the Superior Court for clarification
of the basis of the auditor's conclusions and for redetermination of
damages in accordance with correct principles of law. [463]

Two ACTIONS OF TORT. Writs in the Superior Court dated
July 12, 1951.

The plaintiffs appealed from orders for judgments for the
defendants by *Cahill*, J., upon the report of an auditor whose
findings were to be final.

*Jay W. Mead*, for the plaintiffs.

*William Garbose*, (*William M. Quade* with him,) for the
defendants.

WILLIAMS, J.  In each of these cases the plaintiffs seek
to recover for damage to their property caused by the dis-
charge upon their land of water from the adjoining land of
Athol Housing Authority and the adjacent land of the town
of Athol.  The cases were consolidated for trial and referred
to an auditor whose findings of fact were to be final.

He designated certain portions of his report as "Preface,"
"Facts," and "Conclusion and Finding."  Under the head-
ing "Facts" it was stated that the plaintiffs are husband and
wife and own as tenants by the entirety a parcel of land on
the northerly side of Wilson Avenue in Athol, approximately
rectangular in shape, with boundaries measuring about sixty
feet in front and back and about one hundred forty feet on
the sides.  There is a house and a garage on the property.
On January 23, 1950, Athol Housing Authority acquired the
adjoining land on the north and west by an order of taking.
In the spring and summer of that year it constructed a
macadam surface road called Burma Road running north
from Wilson Avenue adjacent to the westerly boundary of
the plaintiffs' land.  This road was presented to and was

accepted by the town as a public way. The authority retained title to a sidewalk and a three foot strip of grass along its easterly side between it and the plaintiffs' westerly property line. The land of the authority north and northeast of the plaintiffs' land was in large part "spongy and swampy" and sloped generally from the southeast to the northwest. At the time Burma Road was built the authority dug a drainage trench three or four feet deep and four or five feet wide running in a southwesterly direction from the northeast corner of its land to a catch basin installed twelve feet from the plaintiffs' northern boundary. From this catch basin it laid an underground pipe parallel to and about twelve feet from the plaintiffs' boundary for a distance of about eighty feet to a catch basin at the curb in Burma Road, where the pipe connected with a sanitary sewer running from there to Wilson Avenue. From October, 1950, to May, 1951, particularly after rainy weather, water from the trench, carrying silt and dirt, overflowed the catch basin at the end of the trench and ran toward Burma Road over the ground between the catch basin at the end of the trench and the catch basin at Burma Road. It "collected on the westerly side of the plaintiffs' property." During this period water at different times collected in the plaintiffs' cellar to heights varying from four to twenty inches causing substantial damage. Previous to the construction of Burma Road the land on which it was built was lower than the plaintiffs' land and water drained from pipes on the plaintiffs' land westerly across the lot where Burma Road is now located. This medium of drainage was blocked by the fill used in Burma Road and resulted in a "further retaining of water in the plaintiffs' cellar, and . . . a retarding of the flow of water from the plaintiffs' property and raised the water table."

Under the heading "Conclusion and Finding" the auditor reported that "permanent injury to the plaintiffs' property was caused by a situation created by both defendants," and that the total damage sustained by the plaintiffs was $2,250. He assessed damages in that amount against each defendant

with interest from July 12, 1951, the date of each writ.   In each case judgment was ordered for the defendant and the plaintiffs appealed.

A landowner may collect surface water upon his land for a lawful purpose but he is liable if he discharges it on his neighbor's land by means of a definite artificial channel. *Smith* v. *Faxon*, 156 Mass. 589, 596.   *Fitzpatrick* v. *Welch*, 174 Mass. 486.   *Nye* v. *Swift*, 190 Mass. 143, 146–147. *Mahoney* v. *Barrows*, 240 Mass. 378, 379.   *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250, 251–252.   He is also liable if surface water so channelled is artificially retained so that by its retention it is deflected or backed up upon another's land.   *Bates* v. *Westborough*, 151 Mass. 174, 181.   It is immaterial whether injury from water so collected or retained results from the flow of surface water or from subsurface percolation.   *Ball* v. *Nye*, 99 Mass. 582, 584. *Wilson* v. *New Bedford*, 108 Mass. 261, 266.   See *Kennison* v. *Beverly*, 146 Mass. 467, 469; *Belkus* v. *Brockton*, 282 Mass. 285, 288.

It appears that the plaintiffs' damage was caused not only by water discharged from land of the authority but also by the natural accumulation of water on their own land which was prevented from draining through the lower land to the west by the obstruction imposed by Burma Road.   Neither the town nor the authority can rightly be held liable for the damage caused by the maintenance of this obstruction in the absence of a finding of a right in the plaintiffs to drain over the land where the road and sidewalk are maintained. See *Luther* v. *Winnisimmet Co.* 9 Cush. 171.   Compare *Bates* v. *Westborough*, 151 Mass. 174, 181.

"[W]here there is no watercourse by grant or prescription, and no stipulation exists between conterminous proprietors of land concerning the mode in which their respective parcels shall be occupied and improved, no right to regulate or control the surface drainage of water can be asserted by the owner of one lot over that of his neighbor. . . .   The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may

suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil." *Gannon* v. *Hargadon,* 10 Allen, 106, 109–110. *Franklin* v. *Fisk,* 13 Allen, 211, 212. *Bates* v. *Smith,* 100 Mass. 181, 182. *Maddock* v. *Springfield,* 281 Mass. 103, 104–105. *Fulton* v. *Belmont,* 333 Mass. 64. The same rule applies to the subsurface percolation of water from a higher to a lower level. See *Olney* v. *Culluloo Park Co.* 182 App. Div. (N. Y.) 560, 566; *White River Chair Co.* v. *Connecticut River Power Co. of New Hampshire,* 105 Vt. 24, 48–52; Am. Law of Property, § 28.68, and cases cited.

The conclusion of the auditor that both defendants are equally liable for the entire damage to the plaintiffs' property is not supported by his subsidiary findings. The town does not appear to be liable for any of the damage nor the authority for the damage resulting from the obstruction of the drainage. We are, however, doubtful as to the correct interpretation of the auditor's report. While he states that his conclusions are based upon all of the evidence, thereby implying subsidiary findings essential to those conclusions (see *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541, 543), he reports under a heading "Facts" express findings in such detail that it is reasonable to assume they are all of the findings on which his conclusions are based.

The orders for judgment are reversed and the cases remanded to the Superior Court for clarification of the subsidiary findings relied upon by the auditor and for further hearing by the same or another auditor or by the court to determine the amount of damage solely attributable to the overflow and seepage of water from the authority's trench and catch basin.

*So ordered.*