Charlotte Miller *vs.* Merwyn K. Darby & another.

Essex.    May 8, 1957. — June 27, 1957.

Present: Wilkins, C.J., Ronan, Williams, Whittemore, & Cutter, JJ.

*Water. Trespass. Adverse Possession and Prescription. Drain. Damages,* For tort. *Evidence,* Of value, Opinion. *Waiver. Supreme Judicial Court,* Argument.

Facts reported by a master in a suit in equity respecting the maintenance for more than twenty years of a culvert which extended from the plaintiff's land under a highway and terminated upon the defendant's land and which served the purpose of draining the plaintiff's land showed that the plaintiff had a prescriptive right in the defendant's land to maintain the culvert. [245]

Where it appeared in a suit in equity that in filling a low portion of the defendant's land a narrow strip along a highway was left unfilled, thus creating a kind of trench and leaving exposed near the bottom of it the end of a culvert which extended under the highway from the plaintiff's land on the other side thereof and which the plaintiff by prescriptive right maintained there as a drain for her land, and that water collecting in the trench as a "water pocket" flowed back through the culvert and in or alongside a cellar drain on the plaintiff's land into her cellar, the plaintiff was entitled to an injunction against such collection of water and its discharge on her land as constituting a continuing trespass. [246]

Emotional disturbance and failure to sleep well of a landowner through worry over "the water problem" created by water collecting on nearby land and flowing into her cellar was not an element of damages in a proceeding by her against the owner of the other land. [247]

Opinion testimony by a plaintiff, an owner of land, as to diminution of its value through discharge of water onto it was properly excluded by a master who found that the plaintiff was not sufficiently familiar with values to be qualified to give an opinion. [247]

In a suit in equity to enjoin discharging of water on the plaintiff's land and for damages, the plaintiff, on appeal from a final decree dismissing the bill, was deemed to have waived any claim for damages by her failure to make any contention with respect thereto in her brief or argument before this court. [247]

Bill in equity, filed in the Superior Court on October 26, 1955.

The suit was heard by *O'Connell,* J., on a master's report.
*Max Nicholson,* for the plaintiff.
*Frederic S. O'Brien,* for the defendants.

RONAN, J. This is an appeal from a final decree dismissing a bill seeking an injunction restraining the defendants from discharging water upon the plaintiff's premises and for damages. A master's report was confirmed.

The plaintiff is the owner of one undivided half interest in a parcel of land, triangular in form, bounded westerly by Dascomb Road, southeasterly by Bannister Road, and northerly by land of one Murray. The dwelling erected upon this parcel is about one hundred years old and has been occupied by the plaintiff for more than sixty years. There is a cellar with a dirt floor under a part of the house. Bannister Road separates Darby's premises from the plaintiff's land. This lot was conveyed to Darby in 1949 by the defendant Hall, his father-in-law. It is bounded on the south by Clark Road, westerly by Bannister Road, and northerly and easterly by other land of Hall. Clark Road runs easterly from the junction of Dascomb Road and Bannister Road. A house was constructed on a small hill or knoll upon the Darby lot. From this knoll the land sloped downward to the south and east, and from Clark Road there was a slope downward to the north and east. Between these slopes was a broad grassy area. Along Bannister Road the land sloped to the east to this grassy area. During rainy periods or times of melting snow this grassy area became wet and marshy and water ran down the slopes and also collected and stood in places although there never was any well defined stream or watercourse running through this area. The area would dry up during a dry spell, yet most of the time it was wet and marshy and the water which ran through it was surface water only.

In 1934 and possibly for some years before, a cellar drain was installed and maintained by the plaintiff. It ran from her cellar under Bannister Road and discharged upon what is now the Darby lot. This privilege rested entirely upon the oral permission granted by Hall who was then the owner

of the Darby lot. She never acquired anything higher than a license whose enjoyment was revocable at the will of the owner of the Hall land. She knew that fill was deposited on the Darby lot which might block the outlet to the drain and was given an opportunity to extend the drain beyond the area to be filled, but she declined to do so. She has no complaint if the fill did in fact block the outlet. In any event, she finally blocked the drain when she learned that it was conducting water into the cellar. Any interference by the defendants with the discharge of the drain drops out of the case. *Nelson* v. *American Telephone & Telegraph Co.* 270 Mass. 471. *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 56, and cases cited. *Willett* v. *Pilotte,* 329 Mass. 610, 612. *Sturnick* v. *Watson, ante,* 139.

For more than twenty years prior to 1949, and since, there has been a culvert ten or twelve inches in diameter running under Bannister Road from the plaintiff's land and terminating upon what is now the Darby land. The master reports that there was no evidence when or by whom it was laid. Its purpose was to drain the plaintiff's parcel of land. Hall knew, for more than twenty years prior to the commencement of the filling of the lot he conveyed to Darby, of the existence and purpose of the culvert. It discharged very little water, if any. It is a plain inference from the master's report that the plaintiff had a prescriptive right to have the culvert maintained. *White* v. *Chapin,* 12 Allen, 516, 520. *Truc* v. *Field,* 269 Mass. 524, 528–529. *Tucker* v. *Poch,* 321 Mass. 321, 324. *Foot* v. *Bauman,* 333 Mass. 214. *Davenport* v. *Danvers, ante,* 106.

In filling the Darby lot a narrow strip along Bannister Road was left unfilled, thus creating a kind of trench near the bottom of which the end of the culvert was left exposed. Since the last work was done in the way of filling on the Darby lot, which was about the middle of July, 1955, the plaintiff has had serious trouble from the flooding of her cellar. On one occasion the water rose to eleven inches in the cellar. She has plugged up the cellar drain to prevent water from flowing into her cellar. She has laid a pipe con-

necting the cellar to a small pond to the north of her house. She has expended $181.24 for pumps, pump hire and labor in freeing the cellar from water. The master reports that unless other measures are taken further flooding is likely.

It is a plain inference from the master's report that we are dealing here with the diversion of surface water by one landowner to the detriment of an adjacent owner. One landowner has a right to improve his land and to put it to any lawful use, and where there is no watercourse or where there is no direct grant or prescription or agreement the proprietor of the lower land has no right to regulate the use of the upper land by his neighbor. "The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil." *Gannon* v. *Hargadon,* 10 Allen, 106, 109–110. *Maddock* v. *Springfield,* 281 Mass. 103, 104–105. *Deyo* v. *Athol Housing Authority,* 335 Mass. 459. But a landowner has no right to collect surface water into an artificial channel or into a reservoir and then release the captive waters by a culvert or other artificial means upon the land of his neighbor. *Bates* v. *Westborough,* 151 Mass. 174. *Smith* v. *Faxon,* 156 Mass. 589. *Fitzpatrick* v. *Welch,* 174 Mass. 486. *Nye* v. *Swift,* 190 Mass. 143. *Mahoney* v. *Barrows,* 240 Mass. 378. *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250.

The master found that the cause of the flooding of the cellar was the trench which was a "water pocket" where water would be collected; that the bottom of the trench was "about even with the level" of the plaintiff's cellar; that the water in the trench would flow back through the culvert and then within or alongside of the cellar drain into the cellar as there was less resistance to the flow of the water in that manner than easterly through the fill. The culvert and the drain were thus converted from outlets to intakes. The collection of surface water in the trench and the discharging of it by means of the culvert upon the plaintiff's land constituted a continuing trespass. *Manning*

v. *Woodlawn Cemetery Corp.* 245 Mass. 250. *Deyo* v. *Athol Housing Authority,* 335 Mass. 459, 462.

The ruling of the master excluding evidence of the plaintiff that she suffered from emotional disturbance and did not sleep well as a result of "the water problem" was right. Worry over what might happen to her property was not an element of damages. *O'Brien* v. *Worcester,* 172 Mass. 348. The master was also right in excluding her opinion of the diminution of the market value of her property on account of the flowing of the water. He expressly found that she was not so familiar with values as to be qualified to give an opinion. *Lembo* v. *Framingham,* 330 Mass. 461.

The master reports that there is no evidence upon which he can find the diminution of market value. There is nothing in the master's report showing any loss of rental value resulting from the invasion of the water. *Belkus* v. *Brockton,* 282 Mass. 285. *Ryder* v. *Lexington,* 303 Mass. 281.

Moreover, the plaintiff neither in argument nor in brief made any contention that she is entitled to damages. Indeed the entire portion of her brief headed "Conclusion" makes no mention of damages and is only seeking affirmative relief ordering the defendants to refrain "from collecting surface waters in the trench referred to and casting upon the plaintiff's land." We think she has waived any claim for damages. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. *Rowland* v. *Auto Service, Inc.* 332 Mass. 107, 109. *Campbell* v. *Shea,* 332 Mass. 422, 424. *Gibbs* v. *Lido of Worcester, Inc.* 332 Mass. 426, 431–432. *Davis* v. *Vermont Transit Co.* 334 Mass. 248, 250–251. *Galotti* v. *United States Trust Co.* 335 Mass. 496, 503. *Russell* v. *Caroline-Becker, Inc., ante,* 161, 166. *Socony Mobil Oil Co. Inc.* v. *Cottle, ante,* 192.

It follows that the final decree must be reversed and a new decree must be entered restraining the defendants from collecting water in the trench described in the record and permitting it to be discharged on the plaintiff's premises. The plaintiff is to have costs of this appeal.

*So ordered.*