RAYLITE ELECTRIC CORP., Appellant, *v.* CITY OF NEW YORK et al., Respondents.

NEW YORK CITY HOUSING AUTHORITY, Third-Party Plaintiff-Respondent; ROCKAWAY BLVD. WRECKING & LUMBER CO., INC., et al., Third-Party Defendants-Respondents.

ROCKAWAY BLVD. WRECKING & LUMBER CO., INC., Plaintiff, *v.* RAYLITE ELECTRIC CORP., Defendant.

First Department, April 30, 1968.

*Frederick H. Block* of counsel (*Heffner & Block,* attorneys), for appellant.

*Alfred Weinstein* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for City of New York, respondent.

*Walter Feller* of counsel (*E. Edan Spencer,* attorney), for New York City Housing Authority, respondent.

*Harris Birnbaum* for Rockaway Blvd. Wrecking & Lumber Co. Inc., respondent.

McGIVERN, J. This is an appeal from a dismissal at the end of the plaintiff's case.

After a two-week trial and a record of 1780 pages, wherein the Trial Judge extended to the plaintiff the extremest latitude, the following facts emerge: The plaintiff Raylite is a company engaged in the manufacture and sale of Christmas ornaments. It occupied a six-story building and warehouse known as 285 East 137 St., Bronx County, and owned by the defendant Housing Authority. Next door to it was a smaller two-story building, 291 East 137 St., also owned by the Housing Authority, abandoned for many months, and scheduled for demolition by the city in order to make way for a housing project.

On July 18, 1962, a five-alarm fire of unascertained origin erupted at both or either of the buildings, and the building occupied by the plaintiff was completely gutted and destroyed; so also were the contents, largely made up of readily combustible Christmas items. For this loss the plaintiff sued, theorizing that the defendants were delinquent in their care and maintenance of the 291 building, the smaller of the two, permitting it to become dilapidated and debris-laden, that street urchins had easy access to it and that its general condition was tantamount to a violation of section C26–193.0 of the Administrative Code of the City of New York. Further, the plaintiff maintained, that children, on the day of the fire, ignited debris, thus causing the conflagration that spread to and enveloped the plaintiff's building.

We agree with the dismissal of the complaint by the Trial Judge. Although there was some backing and filling by the witnesses, the ultimate residue of their testimony is that no one saw children actually start a fire and run away. And the Fire Marshal, called by the plaintiff as an expert, had no opinion as to where the fire started. A police officer, on the scene after the fire started, in response to a question by the court, similarly said he did not know when, why or how the fire started. The other witnesses were equally unhelpful.

Nor was there a showing of a violation of the Administrative Code. The Trial Judge characterized the proof on this phase as "vague and inconclusive." We do not disagree. On the record before us we cannot say the city or the Housing Authority was lax in not having recognized the 291 building as a nuisance, a fire hazard or a danger. The building itself was small, immured by two party walls, a wire mesh fence in front, and iron bars and a steel door in the rear. It was under the surveillance of the Burns Detective Agency, hired by the Housing Authority. The duty of these representatives was to report anything amiss or in need of repair. The superintendent of maintenance said the building was "well secured." All in all, its condition was well within the standards set forth in *Beauchamp* v. *New York City Housing Auth.* (12 N Y 2d 400, 407) per SCILEPPI, J., wherein it is stated that the duty to secure premises of this character is not absolute. " ' In the striving after safety, [an] owner * * * is not required to go beyond the bounds of what is practicable and reasonable '. (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491, 495; see, also, *Timlin* v. *Standard Oil Co.* [126 N. Y. 514] 523–524; *Odell* v. *Solomon*, 99 N. Y. 635.) Thus, in this case, the duty to provide adequate safeguards to avoid injuring others would have been fulfilled if the doors and windows had been adequately secured to prevent access, together with reasonable inspections to insure the maintenance of said security."

Further, if we could perceive a violation, which we do not, *Beauchamp* (*supra*) tells us a violation would not create a liability per se. And herein, there is still no proof a violation was the proximate cause of the fire, or that the fire was the direct and immediate consequence of such violation. There has simply been no demonstration of a causal connection between any alleged failure on the part of the defendants and the damages to the plaintiff. And as the court below noted: " certainly there has been no proof that there was any accumulation of highly combustible or volatile material in the premises, such as gaso-

line, oil, creosote, gun powder, natural gas, or items along this type, which would constitute an unusual fire hazard.''

If any potential fire hazard existed, it was the plaintiff's building. Six stories in height, the skeletal structure was of wood. There were no steel girders. Only the walls were brick. Although filled with plastic materials and cardboard boxes, it was without a sprinkler system, fire hoses or watchman services. Although every floor extended 3,500 square feet, on every floor there was but a manual fire extinguisher, one pail of water and a lone bucket of sand. No smoking was permitted because of the recognized danger. Containing inflammable articles commonly known in the Christmas trade, it was a natural bonfire. And with the wind from the east, it went up like a holocaust.

The complaint was properly dismissed.

The judgment so far as appealed from should be affirmed, with costs and disbursements to respondents.

EAGER, J. (dissenting in part). I would modify to reverse and vacate the judgment dismissing plaintiff's complaint as against the defendant New York City Housing Authority and remand for a new trial as to said defendant. In my opinion, the Housing Authority, as the owner and person in control of the Crookston Building, was under a duty to plaintiff, as its tenant in the adjoining building, to exercise reasonable care in the management and use of the Crookston Building. The duty of said defendant, as landlord, is to be determined in light of all the circumstances and on the basis of what was reasonably foreseeable as a danger to the use and occupation by the plaintiff of the adjoining premises rented from the Housing Authority. (See *Divines* v. *Dickinson*, 189 Iowa 194; *Brown* v. *City of Sioux City*, 242 Iowa 1196; *Globe Leather & Shoe Findings* v. *Golburgh*, 339 Mass. 380. Also *Smith* v. *Faxon*, 156 Mass. 589; 52 C. J. S., Landlord and Tenant, § 423, subd. e. Cf. *Paltey* v. *Egan*, 200 N. Y. 83.) The Crookston Building was vacant and abandoned, and the defendant intended to have it demolished. There was testimony that it was open and unsecured; that the doors were wide open for a month before the fire; that the glass in a front door was broken and one could walk through the frame; that children were in and out of the building every day for a month before the fire; that there were cartons, rubbish and inflammable material on the floors in the building; that the fire started in this building; that a police officer observed the fire in the trash in the middle of the main floor of the building. This testimony tended to show the existence of hazardous conditions, amounting to a nuisance (see *Beauchamp* v. *New York City Housing Auth.*, 12 N Y 2d 400). In fact, the Administrative

Code of the City of New York (C26–193.0) expressly provided: "Any vacant building unguarded or open at door or window shall be deemed dangerous or unsafe as a fire hazard". On the basis of the record, the alleged fire hazard and the Housing Authority's alleged negligence could be found to have contributed to the starting and spreading of the fire. With reasonable foreseeability as the test, the question of proximate cause would be one of fact. (See *Payne* v. *City of New York,* 277 N. Y. 393; *Arnold* v. *Jackson Holding Corp.,* 10 A D 2d 833; *Peck* v. *Weil,* 231 App. Div. 670.) Inasmuch as the dismissal of plaintiff's complaint was at the end of its case, we have an incomplete picture as to what care the defendant exercised in the matter of the management, supervision and control of the Crookston Building. (See *Beauchamp* v. *New York City Housing Auth., supra,* p. 407.) At the particular juncture of the case, the trial court should not have been concerned with the credibility of plaintiff's witnesses or the weakness of its evidence. The dismissal may not stand on the theory that the court would set aside a verdict for plaintiff as against the weight of the evidence if rendered on the basis of the present record. (See *Reisner* v. *New York Kosher Provisions,* 25 A D 2d 511; *Holmberg* v. *Donohue,* 24 A D 2d 569; *Prince* v. *City of New York,* 21 A D 2d 668.)

BOTEIN, P. J., STEVENS and RABIN, JJ., concur with McGIVERN, J.; EAGER, J., dissents in part in opinion.

Judgment so far as appealed from is affirmed, with $50 costs and disbursements to respondents.