COMMONWEALTH *vs.* CITY OF NEWTON & another.

Middlesex.    May 19, 1904. — June 24, 1904.

Present: MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Municipal Corporations.    Way.    Res Judicata.*

If the metropolitan park commissioners by a mistake unlawfully fill in an old arch-
way under a highway thus stopping the flow of a branch of a river, and the city
maintaining the highway, assuming that it has a right to place solid construction
across this branch of the river, adopts the filling put there by the park commis-
sioners and completes the street upon it, it becomes the duty of the city to re-
move the filling from the archway and construct the necessary culvert.

Where the Commonwealth as against a city has the right to have the city remove
the filling from a certain old archway under a highway and construct a culvert
there, and seeks to enforce this right in a suit in equity in which a certain manu-
facturing corporation properly is joined as a defendant, the fact, that the corpo-
ration is precluded, by a decree in a former suit brought against the metropolitan
park commissioners for damages, from maintaining that the city should construct
the culvert, is no defence for the city as against the Commonwealth whose claim
against the city was not involved in the former suit.

LORING, J.    This suit is before this court on a report made
by a judge of the Superior Court.

From that report it appears that by a taking made by the met-
ropolitan park commissioners in 1895, both sides of the Charles
River south of Boylston Street, shown on the plan accompanying
the report, had been taken for a public park.    Thereupon the
commissioners proceeded to dam up the east branch.    In conse-
quence a bill was brought by the Newton Rubber Works, which
owned land on both sides of the east branch lower down the
river and on the north of Boylston Street, to enjoin the commis-
sioners from continuing this obstruction, and a final decree dated
March 5, 1903, was made by the Superior Court, by which it was
" ordered, adjudged and decreed that the East Branch of the
Charles River be opened up and put in its original condition,
and that the Metropolitan Park Commissioners remove the dam
at the opening of the East Branch, if still existing, and all other
obstructions within the limits of the ownership of the Common-
wealth which would prevent the free and natural flow of water
down said East Branch."    The city of Newton was made a party

defendant after the bill was brought, and " as against the city of Newton the bill was dismissed."

The report then states that the park commissioners, acting under said decree, " excavated a channel on said East Branch and . . . removed all obstructions on said East Branch within the limits of the Commonwealth's ownership which would interfere with the free and natural flow of the water, with the exception of a bank of earth at the upper end of said channel and a sheathing of boards on the line of said Boylston Street, which was constructed to prevent the said street from falling in."

The east branch formerly flowed under Boylston Street, which was laid out by the county commissioners as a county road in 1832. A stone arch was built for the river " sixty or seventy years ago, which has not been since altered and stands to-day in the same condition as when built."

After the commissioners had removed from the land of the Commonwealth all the filling put in by them except a bank of earth at the entrance of the east branch and the bulkhead to keep Boylston Street from falling in, they brought this bill (on June 11, 1903) setting forth that they had in good faith but without right, as it had since been decreed, dammed up the east branch; that they had been directed to remove all obstructions within the limits of the ownership of the Commonwealth which would interfere with the free and natural flow of the water, and that acting under this order they had done so, with the exception of a bank of earth at the upper end of said channel and a wooden bulkhead on the line of the said Boylston Street, which has been " constructed to prevent the said street from falling in." They then allege that they are ready and willing to remove the final obstructions and let in the water as soon as they can safely do so, but that they. are prevented by obstructions placed in the original channel by the city of Newton and the rubber works; and they pray that the city of Newton and the rubber works be ordered to remove these obstructions.

The judge of the Superior Court found that " with the exception of the bank of earth near the upper end and the sheathing of boards at the lower end, the Metropolitan Park Commissioners have complied in a reasonable manner with the decree and removed all obstructions within the limits of the Common-

wealth's ownership to the free and natural flow of water down said East Branch," and that " the commissioners are ready and willing to complete the excavations so soon as the culvert under Boylston Street is completed and the obstructions below removed." He ruled that the bulkhead of the rubber works was an unlawful obstruction, but refused to rule that Boylston Street, as at present constructed, unlawfully obstructs the east branch, and that the Commonwealth is entitled to a decree ordering the city of Newton to complete the culvert under Boylston Street. At the request of the city of Newton he ruled that the city should not be required to be at the expense of opening that part of Boylston Street where the channel was filled by the Commonwealth, and that " the decree in the former case is decisive for the city in this case." There were other rulings, but these raise the questions argued here.

The report ends as follows : " I suspended the decree in the former case, so far as to prevent the Metropolitan Park Commissioners from being held in contempt for non-compliance with the full terms of the decree until the further order of the court.

" I ruled that the complainant was entitled to a decree as against the respondent, the Newton Rubber Works, requiring it to remove the dam or bulkhead referred to in the bill, and that as against the city of Newton the bill should be dismissed.

" And now, at the request of the parties, I report the case upon the pleadings and the above findings for the determination of the Supreme Judicial Court, such decree to be entered as justice requires."

It appears from the report that the rubber works conveyed all its property to the International Automobile and Vehicle Tire Company on May 1, 1899.

It is plain that the bill must be amended by substituting the International Automobile and Vehicle Tire Company as a party defendant in place of the Newton Rubber Works. We construe the agreement which has been made between the parties to the suit as an agreement that this may be done and that the suit may proceed as if it had been done. Although irregular, we proceed on this basis.

It would seem that the principal difference between the par-

ties is the expense of constructing the culvert under Boylston Street.

From the report it appears that the situation in that connection is this: Before the filling made by the park commissioners in the east branch, Boylston Street was not wrought for travel for the whole width of its location on the south side of the road. It seems to have been located fifty feet wide and to have been wrought for travel thirty-seven or thirty-eight feet wide. The east branch at that time ran under Boylston Street through the "stone arch built sixty or seventy years ago," already spoken of. The park commissioners, in filling in the east branch in 1896, not only filled in the channel on the land of the Commonwealth but also filled in that portion of the channel within the location of Boylston Street outside of the constructed roadway, thus blocking up the archway.

It is stated in the report that " with regard to this filling, the street commissioner of Newton testified that it was done with the consent of the city, that it simply saved the city the expense of so much filling, and that afterwards the city filled in on top of it, in connection with the work of completing this part of the street." The judge found that after twelve or thirteen feet in width of Boylston Street had been filled in by the park commissioners, " the city subsequently put in more filling on top as aforesaid and completed the construction of the street in this place." When the city of Newton made use of the filling put in by the park commissioners and made it part of Boylston Street does not appear. It does appear that in January, 1902, Boylston Street was widened on the north side thirty feet, by an order of the board of aldermen of Newton, approved by the mayor. So far as this thirty feet is concerned, a space has been left " sufficient to carry such water as may come through the old archway or culvert."

Had there been no filling against the old archway, it would have been the duty of the city to lengthen out the arch or otherwise provide for the east branch flowing under Boylston Street, when it elected to construct a wrought surface to the full width of the location of Boylston Street on the south. *Perry* v. *Worcester*, 6 Gray, 544. See also *Lawrence* v. *Fairhaven*, 5 Gray, 110; *Parker* v. *Lowell*, 11 Gray, 353.

Had the city of Newton, when it widened the wrought surface of Boylston Street on the south side, notified the park commissioners to remove the filling they had put within the limits of Boylston Street, the commissioners would have been bound to do so in order that the city might build the proper culvert for the east branch. At that time the city seems to have assumed that it had the right, in widening Boylston Street, to make a solid construction across the east branch ; and it adopted the filling put there by the commissioners and completed the street on top of it. By such adoption the filling became as much the filling of the city as if it originally had been put there by it ; and it is now the duty of the city to remove it and to construct the necessary culvert.

This brings us to the " ruling " of the judge of the Superior Court that " The decree in the former case is decisive for the city in this case."

The former case here referred to is the case of *Newton Rubber Works* v. *de las Casas,* 182 Mass. 436. That case was before this court on an appeal by the plaintiff corporation from a decree sustaining the exceptions to the master's report of the defendant as to the damages which the plaintiff corporation was entitled to recover, and overruling an exception taken by the plaintiff to the report, which had nothing to do with the plaintiff's case against the city of Newton.

The difficulty we have in dealing with the ruling that the former case is decisive here is that the record of the former case is not made a part of the report in this case.

But from what is stated in the brief of the Commonwealth it would seem that no cross-bill was filed in that suit to settle the rights between the defendants therein, and we find nothing in the briefs of the other parties to the contrary. We shall assume that to be the fact. Had the right of the Commonwealth to have the city construct the necessary culvert in case the tire company was successful in its claim as to the east branch been in issue there, it could not now litigate that question anew. But if it be assumed that under the agreement between the parties the tire company is entitled to the same rights on the question of *res judicata* as it would have if it had (as it ought to have) been made the party plaintiff in the former suit, and if it be

assumed that the Commonwealth is estopped by the decree' against the park commissioners who were sued as wrongdoers, all that is *res judicata* is that, as between the tire company and the city, the tire company is not entitled to have the city construct this culvert. If the bill in the present suit were a bill merely in aid of the former decree to enable the park commissioners to carry into effect their duty under that decree, there would be good ground for holding that the former decree was decisive here.

But we are of opinion that the present bill must be taken to be an independent bill by the Commonwealth to have the east branch flow through its former channel under Boylston Street, as it now seems it ought to flow. The fact that the rubber works or the tire company failed to secure a decree against the city to have the culvert built, although it was entitled to it, does not prevent the Commonwealth from asserting its right to have the city construct the necessary arch or culvert. In the former suit the right of the tire company to have the city build this culvert was raised, but the right of the Commonwealth to have the arch or culvert built by the city of Newton was not raised. No cross-bill was filed to settle the rights between the defendants therein, and their rights are not concluded by the decree in that suit. *Beveridge* v. *New York Elevated Railroad*, 112 N. Y. 1. *Koelsch* v. *Mixer*, 52 Ohio St. 207. *Harvey* v. *Osborn*, 55 Ind. 535. *State Bank* v. *Bartle*, 114 Mo. 276.

*Powers* v. *Chelsea Savings Bank*, 129 Mass. 44, and *Torrey* v. *Pond*, 102 Mass. 355, relied on by the city, were cases in the nature of bills of interpleader, where the rights between the several defendants were put in issue.

The tire company also has set up the defence that the Commonwealth has not complied with the decree of March 5, 1903, because it " has not opened up the East Branch and put it in its original condition, but, on the contrary, has simply reproduced the artificial conditions of the raceway as it existed appurtenant to a mill." But on this point the finding of the Superior Court is against the tire company. It found, as we have already said, that the park commissioners " have excavated a channel on said East Branch and have removed all obstructions on said East Branch within the limits of the Commonwealth's ownership

which would interfere with the free and natural flow of the water, with the exception of a bank of earth at the upper end of said channel and a sheathing of boards on the line of said Boylston Street, which was constructed to prevent the said street from falling in."

It also contends that by the report of the Superior Court it appears that it is maintaining a dam on the west branch, and that "at times of spring high water, with the gates open, the water flows over the top of the dam to a depth of eighteen inches or more," that this dam is an obstruction within the limits of the ownership of the Commonwealth because it prevents the natural flow of water in the east branch by augmenting and accelerating the same, and that this dam on the west branch has not been removed as required by said decree. This and the further question whether the city is bound to provide a larger culvert under Boylston Street by reason of the maintenance of this dam is not before us under the terms of this report.

The question of the right of the tire company to maintain its dam to keep out surface water from the streets until the natural flow of the east branch is restored need not be considered, as the decree in this suit will insure its being restored.

Upon the International Automobile and Vehicle Tire Company's being substituted as a defendant in place of the Newton Rubber Works, a decree may be entered directing that the answer of the Newton Rubber Works stand as the answer of the tire company; and thereupon a final decree may be entered directing the city of Newton to construct a culvert under Boylston Street sufficient to take care of the free and natural flow of the east branch of Charles River, and directing the tire company, upon the city's so doing, to remove its bulkhead north of Boylston Street.

*So ordered.*

*R. G. Dodge,* Assistant Attorney General, for the Commonwealth.

*W. S. Slocum,* for the city of Newton.

*C. C. Read & G. L. Clarke,* for the Newton Rubber Works.