THOMAS MCMAHON *vs.* CITY OF HOLYOKE.

Hampden. October 24, 1916. — April 9, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Watercourse. Municipal Corporations. Way,* Public.

If a watercourse, which originated in springs and crossed a highway and flowed upon land of an adjoining owner, was collected by the municipality charged with maintaining the highway in a culvert running under it and then flowed from the culvert and through the adjoining land in its own channel, the owner of such adjoining land cannot maintain a suit in equity against the municipality either to restrain the maintenance of the culvert or for damages.

If a municipality charged with the maintenance of a highway constructs a culvert
    under it for the purpose of collecting surface water on one side of the highway
    and discharging it on the other side without its flowing over the travelled
    portion of the way, and such water after passing through the culvert
    thereby is discharged upon land of an adjoining owner, such adjoining owner
    cannot maintain a suit in equity either to enjoin the maintenance of the culvert
    or for damages.

BILL IN EQUITY, filed in the Superior Court on July 8, 1913,
alleging in substance that the defendant city was maintaining a
culvert under the highway between the town of Easthampton
and the city of Holyoke, which unlawfully discharged water upon
land of the plaintiff adjoining the highway, and praying for
an injunction and for damages.

The suit was referred to a master. The material findings of fact
contained in his report are stated in the opinion. After a hearing
by *King*, J., a decree was entered confirming the master's
report and dismissing the bill. The plaintiff appealed.

The case was submitted on briefs.

*N. P. Avery & A. S. Gaylord*, for the plaintiff.

*F. J. O'Neil*, for the defendant.

LORING, J. This bill is brought to enjoin the defendant city
from maintaining a culvert across the highway leading from Hol-
yoke to the town of Easthampton and for damages heretofore
caused by it to the land of the plaintiff. We assume that this
highway runs north and south. The plaintiff owns a lot of land
which butts on the westerly side of this highway. A "stream of
water" starts from a spring or springs some distance to the east of
this highway and runs easterly toward if not to the highway. The
master has not found whether (before the highway was laid out)
this stream crossed the land now within the side lines of the high-
way. The stream is found to be one which has a "considerable
volume of water" in times of flood and "in dry times, the volume
of water dwindles to a very small stream." When the highway
was laid out does not appear but it must be taken to have been
laid out before 1908. The master found that before 1908 the water
of the stream "crossed said highway at a low place in the road
opposite to the land of the plaintiff, and sometimes entered upon
the plaintiff's land, and sometimes was caught in a ditch made by
the plaintiff on the westerly side of the highway, and was carried
in a southerly direction on said highway and emptied into another

ditch." In 1908 the city of Northampton put the culvert in question across the highway and in consequence of it a portion of the plaintiff's land was flooded. Upon the plaintiff complaining to the mayor of Northampton he was employed by that city to dig a ditch "on the southerly side of his land, running in a westerly direction through his land, which ditch was in a line with the culvert." The water which came through this culvert and ditch flowed into a "main drain or ditch" which had been dug by the plaintiff on the plaintiff's land and "from said main drain" water coming through the culvert and through the ditch flowed in a westerly direction and emptied into a pond. The land in question was then within the territorial limits of the city of Northampton. But in 1909 a portion of that city in which the locus is situate was annexed to the defendant city.

On the facts found by the master it is not possible to determine whether the "stream of water" which started from the spring or springs on the easterly side of the highway originally flowed as a natural watercourse across the plaintiff's land through its natural channel or perhaps through a substituted artificial channel (as to which see *Stimson* v. *Brookline,* 197 Mass. 568) and thence to the pond; or whether the natural watercourse originally ended on the easterly side of the highway by virtually sinking into the earth and becoming surface water. This difficulty comes from the fact that in describing the course which the water (coming from the culvert) took after it left the culvert and until it reached the pond the master has spoken of ditches and drains in every instance and has never spoken of the channel of the watercourse.

If the stream which began at the spring or springs on the easterly side of the highway is to be taken to have flowed across the locus of the highway at the time the highway was laid out it was the duty of those constructing the highway to make provision for the free current of the water by constructing a culvert or culverts or in some other way. *Lawrence* v. *Fairhaven,* 5 Gray, 110, 116. *Parker* v. *Lowell,* 11 Gray, 353. *Commonwealth* v. *Newton,* 186 Mass. 286. See in this connection *Hill* v. *Boston,* 122 Mass. 344, 358. And if this duty had been neglected before 1908 the action of the city of Northampton in constructing the culvert at that time must be taken to have been in performance of that duty. If the master (in tracing the flow of the water which

came through the culvert after it left the culvert on the westerly side of the highway) had not spoken of it as flowing through ditches and drains it would have seemed to be pretty clear that the natural watercourse originally crossed the highway and flowed through the plaintiff's land in its own channel. In that case the plaintiff could not complain of the construction of the culvert nor could he complain of the fact that the water flowing through the plaintiff's land in its original channel overflowed its banks.

But in describing the flow of the water which was discharged by the culvert after it left the westerly side of the highway the master throughout speaks of it as flowing through ditches and drains. If by this it is to be taken that the stream originally did not flow as a natural watercourse across the highway the defendant city was within its rights in collecting surface water which collected within the highway and, it being surface water, in discharging it upon the plaintiff's land. *Turner* v. *Dartmouth,* 13 Allen, 291. *Kennison* v. *Beverly,* 146 Mass. 467. *Collins* v. *Waltham,* 151 Mass. 196. *Beals* v. *Brookline,* 174 Mass. 1, 20. *Hewett* v. *Canton,* 182 Mass. 220. The plaintiff's remedy in such a case is to erect a barrier on his own land which would throw this surface water back on to the highway. *Franklin* v. *Fisk,* 13 Allen, 211. *Turner* v. *Dartmouth, ubi supra,* at page 293. See also in this connection *Bates* v. *Smith,* 100 Mass. 181, 182. If that is the case the plaintiff did not have the right to do what he did, namely, to dam up the end of the culvert on the other, namely, on the easterly side of the highway.

It follows therefore that whether the water which came out of the culvert is to be taken to have been a watercourse which flowed through the plaintiff's land in its own channel or to be surface water collected by the defendant city and turned on to the plaintiff's land is immaterial. In either event he has no right to recover.

The decree dismissing the plaintiff's bill must be

*Affirmed.*