CHARLES W. RYDER vs. TOWN OF LEXINGTON.

CHARLES W. RYDER & another, trustees, vs. SAME.

Middlesex.    November 15, 1938. — May 29, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Municipal Corporations*, Liability for tort, Drainage. *Drain. Watercourse. Actionable Tort. Damages*, For tort. *Evidence*, Opinion: expert; Of value. *Practice, Civil*, Exceptions: whether error harmful. *Prescription.*

Upon a finding, warranted by the evidence, that a culvert conveying waters of a brook under a highway and secondary drains connecting with the brook above the culvert were constructed by selectmen acting as agents of the town and not as public officers, the town properly was held liable for damage caused to a landowner above the culvert by the backing of waters of the brook due to the culvert being insufficient to carry away the flow of the brook thus increased by the drains.

It would have been no defence to an action against a town for damage to a landowner caused by a culvert under a way being insufficient to carry away waters of a brook improperly increased by a system of drains constructed by the town's agents, that the culvert was under a county way and was owned and maintained by the county; moreover, in this case a finding was warranted that the locus of the culvert was a town way.

Damages in an action for injury caused to an upper riparian owner by flooding of his land through an improper act of the defendant where the cause of the flooding might be removed by the defendant, properly were limited to the actual injury sustained to the date of the writ, and the correct measure thereof was the diminution in the value of the use of the land during that period caused by the tortious act.

No prejudicial error was shown in admission in evidence by an auditor of opinion testimony of the owner of land as to the diminution in the value of its use during a certain period although he erroneously in part based his opinion on market value of the land, the auditor having ruled that diminution of market value was not an element of damages and it not appearing that there was not evidence sufficient to enable him to determine the diminution of value of use without having recourse to any evidence of market value.

It was proper to refuse to find that in 1931 a town had gained a prescriptive right to flood land of an upper riparian owner on a brook where it appeared that the flooding, which began in 1926, was due to the fact that a culvert, built in 1873, had become insufficient by 1926 to carry away the waters of the brook because of increase thereof due to a system of drains built by the town between 1906 and 1926.

Damages for injury to land due to unlawful flooding from a nonpermanent cause in a period before the plaintiff acquired his title could not be recovered in the absence of an assignment to the plaintiff from the holder of the title during that period.

TWO ACTIONS OF TORT. Writs in the Superior Court dated August 11, 1931.

The actions were heard together by *Walsh*, J., who found for the plaintiff in the first action in the sum of $285.75 and for the plaintiffs in the second action in the sum of $12,080.24.

*S. R. Wrightington*, for the defendant.

*R. B. Owen*, (*J. F. Morgan* with him,) for the plaintiffs.

RONAN, J. These are two actions of tort to recover for damage to several parcels of land, belonging to the plaintiffs, caused by the overflowing of Vine Brook, a natural watercourse, which flows through the southerly central area of the defendant town, through a culvert beneath Massachusetts Avenue, and thence into the Shawsheen River. The plaintiffs allege that the flooding of their property was due to the negligence of the town in constructing and maintaining the culvert under Massachusetts Avenue which retards the flow of the brook, and to the action of the town in overloading the brook by diverting into it, by means of a system of drains, a great amount of surface and ground water. The cases were heard by an auditor, and were then heard upon his report, together with other evidence, in the Superior Court. There were findings for the plaintiffs in both cases.

The plaintiffs own several parcels of land adjacent to or near the brook, and portions of some of these parcels have at times been used for agricultural purposes. Their lands prior to 1926 were flooded at times, but they were used to a considerable extent for raising vegetables and hay. After 1928 it was impossible on account of the wetness of the land to utilize it for these or other useful purposes. Vine Brook has two branches that join about five hundred to six hundred feet south of Massachusetts Avenue, which is the principal street in the defendant town. The watershed of this brook is between eight hundred and nine hundred

acres and the plaintiffs own a little less than two hundred acres. Their lands are located along the lower or southern branch of the brook. The drainage of the area has engaged the attention of the town for more than sixty years. Improvements have been made from time to time, but there have been periods when there was a return of the earlier conditions and the lowlands, especially along the southern branch of Vine Brook, have been flooded. None of the drains carried domestic sewerage or industrial waste.

Following action taken at several town meetings, St. 1873, c. 214, was enacted, which authorized the town to drain the meadows, to make excavations, to lay drains and to take the necessary land. The power conferred on the town was to be exercised by the selectmen. The expenses incurred by the alteration of culverts under public ways were to be borne by the town, and assessments were to be made upon the lands benefited by the drainage. The town voted to accept the act, and appropriated $500 for building or enlarging the culverts under four streets. Evidently some of the work was actually completed, for assessments were laid and collected. This court held that the act had not been duly accepted by the town, *Locke* v. *Selectmen of Lexington*, 122 Mass. 290, and the Legislature passed St. 1878, c. 85, authorizing the town to raise money for the payment of the expenses incurred in draining the meadows and for all damages and liabilities thereby sustained. The previous votes of the town and the expenditures theretofore made were ratified. A subsequent town meeting authorized the reimbursement to those who had paid the assessments.

The auditor reports that "There was no direct evidence concerning when or by whom the culvert which is now beneath Massachusetts Avenue was constructed. Both parties agreed that the culvert was constructed during the progress of the drainage work as authorized by the Statute of 1873." The judge in granting the plaintiffs' first request found that this culvert was constructed by the defendant acting through its agents.

The plaintiffs allege that the brook has been overloaded

by the discharge therein of eight drains.  In 1906 a drain
was built in Massachusetts Avenue for the purpose of
caring for the street surface water and water from roofs
and cellars.  Beginning in 1915 sanitary sewers were laid
in certain streets, including Massachusetts Avenue.  Sub-
drains were constructed under most of these sewers and
they discharged into Vine Brook below the culvert.  There
was evidence that two hundred thousand gallons of water
were daily discharged from these subdrains into the brook.
The other seven drains were constructed during the period
from 1918 to 1931.  All of them took care of surface water
upon the streets.  One also drained a park and this
was connected with another, which drained a playground.
One of these drains was also used to drain a parcel of pri-
vate property, while another drained a school yard.  The
principal purpose, however, of all, excepting the park and
playground drains, was to drain the surface water from
streets, although some of them also drained property in
their vicinity.  Some carried underground water together
with surface water.  They were ordinary, tile drains, having
calked joints (with the exception of the one located in the
playground) and were well constructed in accordance with
good engineering practice.  With the exception of the one
located in the park, they discharged into Vine Brook water
that had accumulated within the watershed of this brook.
The park drain served an area of five acres within the water-
shed of North Brook, but there was evidence that the drain
laid in Massachusetts Avenue discharged into North Brook
the surface drainage of an area of two and three tenths
acres within the natural watershed of Vine Brook.  The
drains carried more water from this watershed into Vine
Brook than would naturally reach this brook because they
conveyed water some of which would ordinarily have been
absorbed by vegetation and evaporation and would never
have reached the brook if the drains had not been laid.
Moreover, less water was being lost by evaporation as the
area of hardened street surfaces increased.

There was no defect in the original plan of these sewers,
but they discharged water into Vine Brook more rapidly

and in greater quantities within given periods of time than would have occurred if the drains had not been installed. No adequate provision was made in the channel of the brook to care for such rapid and increased flow. The culvert at Massachusetts Avenue was insufficient to permit the free unobstructed flow of such a rapid increase in the quantity of water. The result of the discharge was a backing up of the water and the consequent flooding of the lands of the plaintiffs; and thus raising the height of the underground water table and ponding water on the plaintiffs' lands for longer periods of time than would otherwise have occurred. The bed of the culvert was seven and one half inches higher than the bed of the brook for a distance of two hundred twenty-five feet upstream or toward the plaintiffs' properties. This difference in elevation had a tendency to retard the flow of water. The whole capacity of the culvert is insufficient to take care of the flow of water of the brook under flood conditions.

There was evidence that the Massachusetts Avenue drain was constructed by the surveyors of highways; the drain in Muzzey Street was laid in 1918 by the town engineer under instructions from the selectmen; the Engstrom drain, which replaced one laid by the board of health, was constructed by the selectmen; the Highland Avenue drains were constructed in 1925 or 1926 by independent contractors, in accordance with written contracts which were executed by the "Board of Selectmen and Public Works"; the Forest Street extension sewer was laid in 1925; the playground drain was constructed in 1929; the park drain, which was connected with two catch basins in Lincoln Street, drained the park and was laid and connected with the playground drain in 1930; and the Clark Street drain was laid in July, 1931, about a month before the present actions were brought.

The principal contention of the defendant is that the culvert was constructed and these drains were laid by public officers and consequently there is no liability upon the town. A board of sewer commissioners was created by St. 1897, c. 504, and was authorized "to lay out, construct, maintain

and operate a system or systems of main drains and common sewers for a part or for the whole of its territory . . . and said board for the purpose of providing better surface or other drainage for any part or parts of said town, guarding against pollution of waters, and otherwise protecting the public health, may lay, make and maintain such main drains as they deem best, and may within the limits of said town deepen, widen and clear of obstructions any brook, stream or water course, and straighten, alter or divert the courses or channels thereof." Sewer commissioners were elected from the enactment of this statute until 1922. Each year from 1905 to 1917 the same individuals were elected surveyors of highways and selectmen, and from 1917 to 1922 the same persons were elected selectmen and road commissioners. St. 1922, c. 1, provides that the board of selectmen shall constitute the board of public works and shall have the powers and duties vested by law in certain boards including the road commissioners, water and sewer commissioners, park commissioners, and board of health. The town meeting in May, 1926, authorized the selectmen to lay a drainage system across private land from Highland Avenue to Vine Brook and to lay a drainage system in Highland Avenue from Winthrop Road to Bloomfield Street. The auditor reported all the facts relative to the capacity in which selectmen acted in the construction of these drains, but made no finding on this issue. The judge granted various requests of the plaintiffs to the effect that these various drains, except those in the playground and park, were constructed and maintained by certain officials for whose conduct the town is responsible.

The capacity in which the selectmen acted in reference to the culvert and these drains depended upon the statutes then in effect, the action of the town and of the selectmen, and the nature of the work in question. It is a reasonable inference that the culvert was built by the selectmen in accordance with the provisions of St. 1873, c. 214. We have here more than the mere appropriation of money which by itself would be insufficient to impose liability upon the defendant town. *McManus* v. *Weston,* 164 Mass. 263, 267.

*Butman* v. *Newton,* 179 Mass. 1, 7.   *Reed* v. *Springfield,* 258 Mass. 115.   *Wood* v. *Concord,* 268 Mass. 185.   *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 9.   The enactment of the statute, St. 1873, c. 214, was preceded by a series of town meetings, and, when it was declared to be ineffective, the votes of the town and the expenditures incurred were adopted, ratified and confirmed by St. 1878, c. 85.   *Gray* v. *Salem,* 271 Mass. 495.   *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492.   See *Twombley* v. *Selectmen of Billerica,* 262 Mass. 214.   Moreover, the selectmen were authorized by vote of the town, taken after the decision holding that St. 1873, c. 214, had never been accepted by the town, to take such measures as would "sustain and protect their officers and the agents acting under the said drainage act in the discharge of all their duties."   There was evidence that the defendant had, from 1897 and until 1922, a board of sewer and water commissioners created by St. 1897, c. 504, but upon the testimony what relation, if any, they had to the care of the culvert, the brook or the construction or maintenance of the drains, was a question of fact for the judge.   The defendant concedes that for the entire period during which these drains were constructed the town had a superintendent in charge of the maintenance and repair of streets, but contends that he took no action in reference to the construction or maintenance of any of the drains now under consideration.   It was the duty of such superintendent to keep the streets in repair and to provide for the disposition of surface water from the highways.   While acting within the authority conferred by law upon him, he is a public officer for whose conduct the municipality is not liable even if he performs his duties under the supervision or directions of some body like the city council or board of selectmen, provided the superintendent is permitted to exercise his own judgment and discretion in executing his statutory powers.   *Manners* v. *Haverhill,* 135 Mass. 165.   *Prince* v. *Lynn,* 149 Mass. 193.   *Smith* v. *Gloucester,* 201 Mass. 329.

It is clear on the record that all the drains were constructed under supervision of the selectmen.   The records of the board

of selectmen since 1922 contained many captions and marginal notes relating to the subject matter under consideration and, as found by the auditor, "were not intended to be and were not, in fact, an attempt on the part of the board to designate in what capacity the board was sitting or acting." These are actions at law and the findings of the judge are not to be reversed if they can be supported upon any possible view of the evidence. Such findings are conclusive if there is any evidence to support them. *State Street Trust Co.* v. *Lawrence Manuf. Co.* 284 Mass. 355. *Worcester* v. *L. Rocheford & Son, Inc.* 300 Mass. 261. Upon all the evidence, including the reasonable inferences to be drawn therefrom, we cannot say as matter of law that the judge was wrong in finding and ruling that the selectmen acted as agents of the defendant. *Hawks* v. *Charlemont*, 107 Mass. 414. *Deane* v. *Randolph*, 132 Mass. 475. *Doherty* v. *Braintree*, 148 Mass. 495. *Butman* v. *Newton*, 179 Mass. 1. *Daley* v. *Watertown*, 192 Mass. 116. *Daddario* v. *Pittsfield*, 301 Mass. 552.

The erection and maintenance by a town of a culvert that materially interrupts the free flow of a stream and causes damage to a riparian owner are actionable wrongs. *Perry* v. *Worcester*, 6 Gray, 544. *Parker* v. *Lowell*, 11 Gray, 353. *Stimson* v. *Brookline*, 197 Mass. 568. *Belkus* v. *Brockton*, 282 Mass. 285. The collection by agents of a town of surface or underground water, some of which comes from private land or from outside the natural watershed, and the discharging of it into a natural watercourse in such volume and with such rapidity as to overload the watercourse and to damage the adjacent land constitute a trespass. *Manning* v. *Lowell*, 130 Mass. 21. *Stanchfield* v. *Newton*, 142 Mass. 110. *Bates* v. *Westborough*, 151 Mass. 174. *Nevins* v. *Fitchburg*, 174 Mass. 545. *Daley* v. *Watertown*, 192 Mass. 116. *Diamond* v. *North Attleborough*, 219 Mass. 587. The present cases are distinguishable from *Shea* v. *Lexington*, 290 Mass. 361, because there it was not shown by testimony that the persons who laid the drains were acting as agents of the town.

It is unnecessary to determine the amount of damage

occasioned by the drains from the playground and park or from the private land, even if it could be found that they were built by the selectmen acting as public officers in their capacity as park or playground commissioners or as members of the board of health. The auditor was unable to apportion the damage to any particular drain or to the inadequacy of the culvert. The plaintiffs showed that the damage to their lands was due to the discharge of the drains in conjunction with the insufficient culvert. The size and location of the drains, the extent of the area served by each, and the resulting effect upon the properties of the plaintiffs, which first appeared in 1926, presented a question of fact whether the damage was caused by the acts of agents of the town or was due to other causes for which the town was not to be held responsible. *Parker* v. *American Woolen Co.* 195 Mass. 591. *Siciliano* v. *Barbuto,* 265 Mass. 390.

Nothing herein decided is in conflict with the well established principle that a town is not liable to a citizen whose property is damaged by the discharge thereon of water, due to the acts of public officers in the performance of their duties. *Dupuis* v. *Fall River,* 223 Mass. 73. *Blaisdell* v. *Stoneham,* 229 Mass. 563. *Anglim* v. *Brockton,* 278 Mass. 90. *Bradley* v. *Marlborough,* 296 Mass. 253. If a town sees fit to perform its functions through persons other than those especially authorized by law to carry out the prescribed duties, then the town must be held responsible to those who are injured by its agents. *Hawks* v. *Charlemont,* 107 Mass. 414. *Waldron* v. *Haverhill,* 143 Mass. 582. *Butman* v. *Newton,* 179 Mass. 1. Corporate action by a town in the undertaking of some public project by its agents is frequently shown by appropriate vote, *Lawrence* v. *Fairhaven,* 5 Gray, 110; *Perry* v. *Worcester,* 6 Gray, 544; *Sprague* v. *Worcester,* 13 Gray, 193, and the absence of such a vote is strong evidence of the lack of such action. *Wood* v. *Concord,* 268 Mass. 185. *Gosselin* v. *Northbridge,* 296 Mass. 351. The record in the present cases shows various votes authorizing the performance of portions of the work that contributed to the damage of the plaintiffs' property.

The defendant contends that Massachusetts Avenue was a county way and that the defendant cannot be held liable for the size of the culvert. The way was widened in 1888 and in 1915 in accordance with decrees of the county commissioners. Since 1906, the upstream part of the culvert was covered for a distance of fifty feet by an abutter, but no other changes have been made in the culvert. There was no evidence that the county had erected, repaired or maintained the culvert. The record discloses various activities of the town relative to this public way, and a finding was warranted that the locus of the culvert was a town way. *Bliss* v. *Deerfield,* 13 Pick. 102. Even if the culvert was owned and maintained by the county, the town, if shown to have committed a wrong by overloading the brook, cannot now complain because a cause beyond its control also contributed to the damage. *Corey* v. *Havener,* 182 Mass. 250. *Oulighan* v. *Butler,* 189 Mass. 287, 293.

The auditor found that although the injury is continuous it could at any time be eliminated by the defendant, and ruled that the measure of damages is the lessened rental value while the injury continues. The judge found that the auditor's report was not controlled by the testimony introduced at the trial and adopted the findings of the auditor. The judge ruled that damages were to be computed upon the basis of the impairment of rental value and found for each plaintiff in accordance with the damages determined by the auditor. Where an injury to land is caused by a situation that has been created by a defendant, and such an injury will continue as long as such a cause exists, and the cause is not permanent but is one that can be remedied at the option of the defendant, then damages should not be awarded once and for all time upon the theory that the injury to the land is permanent, but should be limited to the actual injury sustained to the date of the writ. In such cases, the diminution in the value of the use of the land is the correct measure of damages. There was no evidence to sustain a finding that the land had been permanently damaged or that the plaintiffs had incurred expense in repairing actual injury to their properties. In

the circumstances shown by the record, the judge was right in limiting the damages to such loss of rental value as was shown to have resulted from the defendant's action. The plaintiffs are entitled to recover for the wrongful interference with the use of their lands. *Prentiss* v. *Wood*, 132 Mass. 486. *Aldworth* v. *Lynn*, 153 Mass. 53. *Matthews* v. *New York Central & Hudson River Railroad*, 231 Mass. 10. *Sturtevant* v. *Ford*, 280 Mass. 303. *Belkus* v. *Brockton*, 282 Mass. 285.

The auditor admitted evidence of Ryder, one of the plaintiffs, as to the rental value of the land. He was familiar with the various parcels long before he became one of the owners. He testified to the uses that had been made of these parcels. He knew the amount and value of the vegetables and hay that had been raised upon such of the lots as were adapted to agricultural purposes and the amount of fruit that had been grown upon the premises. He had worked upon the land before and since he became one of the owners, and from time to time as he acquired the various parcels he has had the management and control of the land. As one of the owners, he was qualified to give an opinion on the value of the use of his property. *Patch* v. *Boston*, 146 Mass. 52. *Blaney* v. *Salem*, 160 Mass. 303. *Shea* v. *Hudson*, 165 Mass. 43. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499. But it having appeared in his testimony that he had based his opinion of rental value in some instances upon a percentage of the market value of the property, in other instances upon the annual value of the crops that could be raised upon the various lots, and in others upon a combination of crop value with respect to that part of the land suitable for agricultural purposes and a percentage of the market value of the remainder not readily adapted to such purposes, the defendant moved to strike out such testimony. The auditor had previously ruled that the diminution in market value was not the measure of damages and that the plaintiffs could recover only for diminution in the value of the use of their land. In other words, market value was not an element of damages. The defendant does not contend that this was not

correct, but contends that the admission of evidence which in part at least was based upon market value was wrong. Rental value of land has been held competent to prove the market value of the premises, *Lincoln* v. *Commonwealth*, 164 Mass. 368; *Levenson* v. *Boston Elevated Railway*, 191 Mass. 75, and in view of the ruling of the auditor in excluding evidence of market value, we need not consider whether evidence of market value is admissible to prove the value of the use of real estate. *The Minnesota Rate Cases*, 230 U. S. 352, 434, 435. *Glenbrook Co. Inc.* v. *Phillips*, 243 N. Y. 186. The auditor viewed the premises, and observed the location of the different parcels, their size, shape and appearance. Some of the land had been laid out for house lots and he could determine to some extent the use for which the remaining land was available. We cannot say that the evidence was not sufficient to enable the auditor to determine the loss in rental value without having recourse to any evidence of market value. The issue did not apparently present any inherent legal difficulty. Questions of value are commonly determined by juries. *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129, 133. The auditor, it must be assumed, followed his own ruling and disregarded any evidence of market value. *Washburn* v. *R. F. Owens Co.* 252 Mass. 47. *Hendler* v. *Coffey*, 278 Mass. 339. *Walsh* v. *District Court of Springfield*, 297 Mass. 472. Even if Ryder was the only witness for the plaintiffs who testified as to damages, the auditor could accept such facts in his testimony as commended themselves to his judgment, and reject his opinion as to damages. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220, 235. *Martin* v. *Otis*, 233 Mass. 491. An inspection of the report of the auditor does not show that he adopted or followed the opinion of this witness. The auditor refused to find any damages on lots 1 and 2 because the only evidence submitted by the plaintiffs was evidence tending to show a diminution in their market value. The auditor found that ten other lots had sustained damage but there is nothing whatever contained in the record to enable us to find that

he adopted the opinion of the owner as to the amount of damage, with the possible exception of lot 6. The owner had raised cabbage, potatoes, corn and other crops on this lot. It also contained a peach orchard. The basis for the opinion of the owner was the loss of an annual peach crop amounting to $25 and a rental loss of $125 for the rest of the lot which was available for cultivation. The witness testified that annual rental of his lot was $50 at the date of the writ and that accordingly the net rental loss was $100 a year. The auditor arrived at the same figure but we do not know what the evidence showed as to the value of the vegetable and peach crops before the property was damaged and we do not know what figures were used by the auditor in reaching his conclusions. Even if he adopted the owner's method of determining the loss we should hesitate to say on the face of the report that he was wrong. The only other lot where the report shows that the owner testified as to loss of rental was lot 3 and in that instance the auditor declined to award any damages. We are satisfied that in awarding damages he employed the correct rule in accordance with his announced ruling. The defendant has not shown that it has suffered harm. G. L. (Ter. Ed.) c. 231, § 132. There was no prejudicial error in the admission of the evidence of Ryder, in the refusal to recommit the auditor's report on this ground, in the denial of the defendant's request to strike out portions of the auditor's report dealing with this evidence or in the denial of requests for rulings based upon such evidence.

There was no error in refusing to find that the defendant had gained a prescriptive right to flood the plaintiffs' premises to the extent disclosed by the evidence. The plaintiffs were complaining of a continuous trespass, which did not appear until 1926, and which was the cumulative effect of the inadequacy of the culvert and the discharge of large volumes of water from the various drains that were constructed from time to time. The excessive flooding did not occur until five years before the present actions were brought, and the record does not support the defendant's contention that it has a prescriptive right to continue to flood the lands

of the plaintiffs or that it has a prescriptive right to flood to a certain degree. The culvert and drains were a part of a system and it was apparently impossible to apportion the damage to any single portion of the system. The issue is not the prescriptive right to maintain a structure which until recently was innocuous but whether there was a prescriptive right to inflict the damage shown by the evidence. The maintenance of a culvert since 1873 did not give the defendant any prescriptive right in 1926 to inflict damage by the use of this culvert, which had then become insufficient, as an outlet for a natural watercourse that had been greatly overloaded by the defendant. In other words it was the act of the defendant about 1926 that made the culvert inadequate for the purposes for which it had been constructed. The defendant has shown no right to inflict the damage now complained of, and the plaintiffs were correctly permitted to recover for the damage sustained on account of conditions that first began to appear in 1926, and developed to such an extent in 1928 as to deprive the plaintiffs of any practical use of a great portion of their lands. *Prentiss* v. *Wood*, 132 Mass. 486. *Hooten* v. *Barnard*, 137 Mass. 36. *Wells* v. *New Haven & Northampton Co.* 151 Mass. 46. *Milton* v. *Puffer*, 207 Mass. 416. *Manning* v. *Woodlawn Cemetery Corp.* 239 Mass. 5, 8. *Harrisonville* v. *W. S. Dickey Clay Manuf. Co.* 289 U. S. 334, 341. *Conestee Mills* v. *Greenville*, 160 S. C. 10; 75 Am. L. R. 519.

The plaintiffs in the second case became owners of their premises in 1930. There is no evidence of an assignment to them of any claim for damage incurred prior to their ownership, and the instruments of conveyance to them are not disclosed by the record. The claim for such damage was a chose in action which did not run with the land and therefore would not be included in deeds in the usual form which merely convey an interest in land. *Patten* v. *Fitz*, 138 Mass. 456. *Webster* v. *Lowell*, 139 Mass. 172. *Barnes* v. *Springfield*, 268 Mass. 497. The plaintiffs were not entitled to recover for damage that occurred before they became owners of the various parcels. *Prentiss* v. *Wood*, 132 Mass. 486. *Milton* v. *Puffer*, 207 Mass. 416. The

amount of damages to which they are entitled may be computed from the report of the auditor, who determined an annual rate for each parcel that he found had sustained damage. The defendant's request that the plaintiffs in the second case are not entitled to damages for any period prior to June 5, 1930, should have been granted.

We have examined the various other requests for rulings made by the defendant and its exceptions to rulings on evidence, but we perceive no error.

The exceptions in the first case are overruled. The exceptions in the second case must be sustained. The new trial is to be limited to the proper assessment of damages at the rate found by the auditor during the period of the ownership of the plaintiffs and up to the date of the writ.

*So ordered.*