DAVID H. FULTON & another *vs.* TOWN OF BELMONT.

Middlesex. January 7, 1955. — July 7, 1955.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Drain. Municipal Corporations*, Highways, Drainage.

Liability of a town to the owner of land adjacent to a highway on the
ground of illegal maintenance by the town of a drain running from
a catch basin within the limits of the highway into and under the
land was not established where it appeared that the drain had been
installed, not by the town, but by a former owner of the land for his
own purposes, and that the town had never adopted the drain as part
of the highway drainage system nor exercised any control of it. [67–68]

A town which installed a catch basin to take surface water at a low point
within the limits of a highway would not be liable to the owner of
land abutting the highway at that point for damage from water perco-
lating from the catch basin into his land, nor was it liable to him
for damage to his land caused by water coming from breaks, within
his land, in a drain pipe which had been installed by a predecessor
in title of his from the catch basin under his land for the purpose of
keeping water off it and which was not a part of the highway drain-
age system nor controlled by the town. [68–69]

PETITION for a writ of mandamus, filed in the Superior
Court on November 28, 1949, and afterwards amended into
a bill in equity.

The suit was heard by *Smith, J.*

*David H. Fulton*, (*Robert Fulton* with him,) for the plain-
tiffs.

*Earle C. Parks*, Town Counsel, (*John F. Elliott & Melvin
Lee* with him,) for the defendant.

COUNIHAN, J. The plaintiffs, who are husband and wife,
are owners of certain land with the buildings thereon on
Marsh Street in Belmont. They originally brought a peti-
tion for a writ of mandamus on November 28, 1949, which
by leave of court on June 16, 1950, was amended into a
bill in equity. In the bill they prayed that the defendant
by mandatory injunction be ordered to remove a pipe

maintained by the defendant under land of the plaintiffs; that the defendant be enjoined from discharging surface water from Marsh Street under or into the land of the plaintiffs; that damages be awarded the plaintiffs for the injury already caused to their property by the maintenance theretofore by the defendant of a pipe line or watercourse under the land of the plaintiffs; and "for personal damages, for annoyance and discomfort."

The suit was tried before a judge who reported the cause for the consideration of the full court upon the bill of complaint as amended, the answer, all the evidence, and the findings of fact. The report is properly before us, G. L. (Ter. Ed.) c. 214, § 31, and proceedings upon it are governed by G. L. (Ter. Ed.) c. 214, § 25. In these circumstances it is our duty "to examine the evidence and to decide the case according to our own judgment, giving due weight to the findings of the trial judge which will not be reversed unless plainly wrong." *Cohen* v. *Santoianni*, 330 Mass. 187, 190–191. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 407–408.

With this in mind we summarize the following facts found by the judge. The plaintiffs own a parcel of land on Marsh Street in Belmont on which is located a house which was built in 1936 by one Anderson and purchased by the plaintiffs in 1941 from an intermediate owner. Since then they have occupied it as their home. Marsh Street is a watertight roadway which was last rebuilt in 1930 or 1931. Along the side of this street is an elevation called a berm which is designed to carry surface water to two catch basins, one on each side of the street but within its limits. These catch basins are located in a low point of the street in front of the plaintiffs' home. The street runs upgrade in each direction from this low spot. The catch basins are connected with each other but are not connected with any storm drain or sewer maintained in the street by the defendant. The catch basin on the plaintiffs' side of the street is connected with a drain which originally ran under

or near the southeasterly line of the plaintiffs' land to a low spot on this land about one hundred fifty feet from the front of the lot. This drain was installed by Anderson who built the house in 1936. The town furnished the pipe. The drain was designed to take care of surface water which overflowed from the street over the lawn.

On December 8, 1947, the plaintiffs notified the defendant in writing to remove this drain pipe and to cease and desist from draining the catch basin on the street through the pipe underlying their property. At the same time they posted a notice to prevent easement and recorded it.

The judge specifically made further findings: "From 1936 to 1947 no complaint was made to the town. The town claimed no right, title or interest in the pipe line, nor the land around it, and before 1947 never repaired the pipe line, or entered upon the petitioners' land, made no taking, and in no way exercised control over the petitioners' premises or any part of them. Because of persistent complaints from the petitioners, the town, in an effort to eliminate the cause of the complaints, and with the permission of the petitioners, [on or about April 26, 1951] entered upon the land and voluntarily extended the length of the drain in order to carry the water further toward the rear of the petitioners' property. . . .

"The drain pipe here involved starts at a catch basin located on the northerly side of Marsh Street near what would be the southeasterly corner of the petitioners' land. This drain pipe runs along the easterly border of the petitioners' land in a general northerly direction and comes to an open end in a marshy area in the extreme northerly part of the petitioners' land, where there is a natural spring and a generally wet area.

"In July of 1947, the parties attempted to end their difficulties by the execution of an easement agreement proffered by the town to the petitioners, but after some negotiations the petitioners refused to enter into the agreement by letter dated September 5, 1947. The problem existing between the town and the petitioners was again

brought up at a meeting of the board of selectmen on July 2, 1951. No easement was ever acquired by the town of Belmont over the petitioners' land.

"At the trial, it appeared that . . . Carl Anderson, a contractor who erected the petitioners' house, acquired title to the lot here involved from the trustees of the Belmont Hills Company in 1936, and after the relocation and surfacing of Marsh Street the house was then constructed and the lot was graded. Anderson testified that surface water overflowed the land and that he requested the town to install catch basins in Marsh Street. He then laid a tile pipe line with open joints into his land from the catch basin in Marsh Street, which ran northerly to a point near the garage, in order that the surface water flowing from the street and percolating from the catch basins could be conducted toward the rear of his property. This pipe line was constructed and in use when the petitioners bought the house in 1941, and was later extended in length.

"The court had a view of the premises.

"No evidence was introduced at the trial to show that the town exercised any rights it might have had under Acts of 1906, c. 246, or G. L. (Ter. Ed.) c. 83, § 4.

"I find that the drain was constructed by Anderson for his own use and is not now and never has been controlled by the town of Belmont, nor adopted by it as a part of its drainage system; nor has the town of Belmont assumed control and management of the drain.

"I further find that the discharge of water on the petitioners' property comes from defects or breaks in that part of the drain which is on the petitioners' own property.

"I find on all the evidence that the petitioners are not entitled to the relief prayed for. . . .

"I report the case to the Supreme Judicial Court. If my ruling is correct, the bill is to be dismissed. If I am in error, a decree may be entered awarding such relief as may be required, together with an award of four thousand dollars ($4,000) damages."

The gravamen of the plaintiffs' complaints is that the

town of Belmont is illegally maintaining this drain on their land. The facts found by the judge plainly do not permit recovery on this ground. The town did not install the drain, through either its public officers or its agents. The drain was installed by Anderson in 1936 and since then has been suffered to remain there by subsequent owners including the plaintiffs themselves. Their second complaint is in effect that the town has unlawfully flooded their property and is liable to them in damages. They rely upon *Ryder* v. *Lexington*, 303 Mass. 281, and *Wishnewsky* v. *Saugus*, 325 Mass. 191. Both of these cases, however, are distinguishable. In the *Ryder* case the town, through its agents, caused an obstruction to a stream so that the owners' lands were flooded. In the *Wishnewsky* case the town, through its agents, installed a drainage system which flooded the owner's land. In the case at bar no acts of any agent of the town were involved.

Here the town built in the limits of a street two catch basins interconnected but not tied in with a storm drain or sewer. It had a right to do this and it was not required to dispose of surface water if any was collected. If the town had allowed this surface water to seep and percolate out of the catch basins, thereby flooding abutting land, no action would lie, *Turner* v. *Dartmouth*, 13 Allen, 291, 293; *Kennison* v. *Beverly*, 146 Mass. 467; *Holleran* v. *Boston*, 176 Mass. 75, 77; *Buerkel* v. *Boston*, 286 Mass. 412, 416, because the building of the catch basins would be designed to keep streets in repair and safe for travel. See *Shea* v. *Lexington*, 290 Mass. 361, 368.

If these catch basins were installed for these reasons, adjoining owners could erect structures on their lands up to the line of the highway to prevent surface water from flowing onto their land. *Barry* v. *Lowell*, 8 Allen, 127, 129. *Franklin* v. *Fisk*, 13 Allen, 211. *McMahon* v. *Holyoke*, 226 Mass. 450, 453. It is obvious that this drain was built by Anderson to keep off surface water. See *Emery* v. *Lowell*, 104 Mass. 13, 16.

The damage to the plaintiffs' property was the result of

nonactionable flowage from the street of surface water or of negligent construction and maintenance of the drain on the land of the plaintiffs. Theoretically at least the drain was in the control of the plaintiffs from July 7, 1941, when they acquired the premises. The findings and rulings of the judge were proper.

During the trial the plaintiffs took four exceptions on evidential matters. None of these exceptions was argued in the plaintiffs' brief so they are deemed waived. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

One thing more remains to be considered. In its answer the defendant admits that since 1930, when Marsh Street was relocated, it has maintained the pipe line draining surface water collecting on Marsh Street and causing the same to be discharged upon the rear of what is now the plaintiffs' land. The defendant is bound by this admission. This is contrary, however, to the evidence and the findings of the judge.

The defendant is given leave, if so advised, within thirty days after the date of rescript, to apply to the Superior Court for appropriate amendments to its answer so that it may conform to the proof. If such amendments are allowed, the bill is to be dismissed; otherwise a decree is to be entered awarding such relief as may be required, together with an award of $4,000 damages.

*So ordered.*