*Municipal Court of the Roxbury District*

No. 7076, No. 7439, No. 8571

*Northern District*

No. 4893, No. 4893A, No. 4893B

## A & S PRODUCTS CORP.

**v.**

## MINNIE PARKER

(September 13, 1955)

*Brooks, J.* These three cases come up on a consolidated report. They stem from the same cause of action; involve the same parties, pleadings, and issues except that each action is for a different interval of time. They were tried together. Before (*Gourdin, Sp. J.*)

There are three actions of contract in which plaintiff as lessee, under a written lease executed on or about May 11, 1953, to take affect June 1st, and to run for two years, seeks to recover damages for breach of the lease from defendant, the lessor of the premises. The following clause in the lease is pertinent:

"The lessor agrees to use due diligence in

furnishing heat for the premises during the usual business hours during the heating season, but the lessor shall not be responsible for any interruption in the supply of heat or for any claims arising as a result thereof."

Plaintiff alleges that by the terms of the lease, defendant agreed to use due diligence in furnishing heat for the premises during the usual business hours during the heating season, but that defendant breached that agreement and as a result, plaintiff incurred considerable expense, was greatly damaged in its business and was deprived of the enjoyment of such premises. Docket No. 7076 is for the period from October 15, 1953, to December 11, 1953. Docket No. 7439 is for the year December 11, 1953, to February 15, 1954. Docket No. 8571 is for the period from February 15, 1954, to August 30, 1954.

Defendant's answer in all three actions is a general denial, payment, and an allegation that defendant has used due diligence in furnishing heat to the premises but that plaintiff has left the doors to its premises open whereby the heat is permitted to escape and cold air to enter said premises.

Defendant filed a motion for specifications in all three actions asking information as to all items of damage which plaintiff claims to have suffered. Plaintiff in each action specified the following: "Loss of man hours of work by employees, discomfort of lessee and employees, inability to perform usual duties, electricity consumed to operate heating blowers."

At the trial of the three actions, there was evidence tending to show that the premises consisted of a 2-story building with a basement subdivided and occupied by two tenants. Plaintiff occupied the first and second floors, which had, prior to May, 1953, been vacated. The building, prior to the lease, had no heating equipment.

Adjacent to the foregoing premises was another industrial building owned by defendant, heated by

a central heating system. Sometime during the summer of 1953, new pipe lines were run from the central heating system to the premises occupied by plaintiff. In November, 1953, one blower type unit heater was installed on the first floor and another one on the second floor. During December, 1953, a second such heater was installed on the first floor and another on the second floor. These heaters were installed and connected by defendant but were not wired to the electricity by defendant. They were in each instance wired by plaintiff to its own electric meter.

Some heat was first supplied to plaintiff's premises during November, 1953. However, plaintiff complained frequently about insufficient heating and the matter was discussed between officers of plaintiff and agents of defendant. These premises were used by plaintiff for sale and distribution at wholesale of hardware, kitchen, and household wares and other related purposes. There was also an office and a showroom. There were four shipping doors, seven or eight feet wide and six or seven feet high through which goods were received and shipped daily. During the receiving and shipping of goods, the door remains open for periods ranging from five to twenty minutes.

There was evidence that conversations took place between officers of plaintiff and agents of defendant during May, 1953, subsequent to execution of the lease in which defendant's agent promised plenty of heat when the cold weather arrived. After the installation of the original blowers, there was no heat because the blowers had not been wired. After complaint by plaintiff of insufficient heat, defendant's agent installed the additional blowers, but plaintiff had to wire the blowers to its own meter. The premises were so cold as to require the employees to be heavily dressed. On one occasion in December, 1953, there was a skim of ice over the water in the toilet bowl. Because of the cold, plaintiff purchased a space heater for both floors.

In November, 1954, defendant's workmen took down the piping and blowers previously installed, re-installed and re-located all heaters and re-placed the piping. Two additional heaters were added on the first floor and one more on the second floor. These were wired to plaintiff's electric meter. Since that time the heat has been adequate.

There was expert testimony by plaintiff's witness that the four unit heaters were inadequate to heat the premises, even if properly installed, but they were not properly installed. Defendant's evidence contradicted plaintiff's evidence in numerous aspects of the case.

At the trial, an expert witness, presented by plaintiff, was permitted to testify over defendant's objection and subject to defendant's claim for a report that the fair, yearly rental value of the premises heated was $3434 and that unheated the fair, yearly rental value was $2382. Another witness for plaintiff testified over defendant's objections and subject to defendant's claim for a report that the reasonable value of fuel to supply heat for the premises for one year, commencing June 1, 1953, was $1050. Defendant's objections in each instance were based on the fact that plaintiff's specifications did not include the difference in value of the premises heated and unheated as an item of damage.

At the close of the trial defendant seasonably filed certain requests for rulings, the same in all three actions, which, with the court's action thereon are as follows:

1. The evidence introduced by the plaintiff is insufficient to warrant a finding for the plaintiff. *Denied*

2. The evidence introduced by the defendant is insufficient to warrant a finding for the defendant. *Allowed*

3. In order to prevail in this action, the plaintiff must affirmatively establish by a fair preponderance of the evidence that the defendant did not use due diligence in furnishing heat for the premises during the usual

business hours, during that part of the heating season here involved. *Allowed*

4. The plaintiff has failed to sustain the burden of establishing failure of the defendant to exercise due diligence in furnishing heat for the premises during the usual business hours, during that part of the heating season here involved. *Denied*

5. If the court should find for the plaintiff, then the measure of damages applicable in this action is the difference in value of the premises, heated as stipulated in the lease, and the value of said premises as they were in fact heated, and this difference cannot exceed the reasonable cost of supplying heat for said premises as provided in the lease. *McCormick v. Stowell,* 138 Mass. 431. *Allowed*

6. The burden is on the plaintiff to establish its damages, if any, resulting from the alleged failure of the defendant to use due diligence in furnishing heat on the premises. *Stanwood v. Comer,* 118 Mass. 54. *Allowed*

7. The plaintiff has failed to sustain the burden of establishing damages resulting to it from the alleged failure of the defendant to use due diligence in furnishing heat for the premises. *Denied*

8. On all the evidence, a finding for the plaintiff is not warranted. *Denied*

9. On all the evidence, a finding for the defendant is required. *Denied*

10. The evidence warrants a finding that the defendant exercised due diligence in furnishing heat for the premises. *Denied*

11. If it appears that the plaintiff in the conduct of its business, frequently had one or more of its shipping doors open during the usual business hours, for periods of 30 minutes or more; that the shipping doors are approximately 7 or 8 feet wide and 6 or 7 feet high; that the first floor of the premises is approximately 70 feet long, 40 feet wide and 10 or 11 feet high, and that this use of the premises contributed in whole or in part to the allegedly inadequate heat in the premises,

the plaintiff is not entitled to recover in this action. *Denied*

12. The evidence warrants a finding that the plaintiff in the conduct of its business frequently had one or more of its shipping doors open during the usual business hours, for periods of 30 minutes or more; that the shipping doors are approximately 7 or 8 feet wide and 6 or 7 feet high; that the first floor of the premises is approximately 70 feet long, 40 feet wide and 10 or 11 feet high; and that this use of the premises contributed in whole or in part to the allegedly inadequate heat in the premises. *Denied*

The court found for plaintiff in the sum of $569.79 in docket No. 7076, in the sum of $175.32 in docket No. 7439, and the sum of $482.13 in docket No. 8571.

Three issues are presented in this case.

First, did defendant, as she claims in her answer, exercise "due diligence in furnishing heat" for the leased premises.

Second, was there an interruption of heat within the meaning of the clause in the lease above quoted which would relieve defendant of liability.

Third, did the trial judge, over defendant's objection, improperly admit evidence regarding damages.

The first issue is raised by defendant's requests for rulings Nos. 1, 4, 8, 9, 10, 11, 12. The second issue is raised by requests Nos. 1, 8, 9. The third issue relating to damages comes up as a result of defendant's claim for a report on the court's admission of evidence on behalf of plaintiff regarding rental values and cost of fuel and is also raised by request for ruling No. 7.

Apart from the inferences to be drawn from the court's action on requests for rulings, there were no findings of fact other than those relating to the amount of damages in each case. The judge's disposition of defendant's requests for rulings clearly

indicates that he found as a fact that defendant had not been diligent. The reported evidence most favorable to plaintiff amply supports this conclusion. The lease required "due diligence" in furnishing heat. There was evidence in amplification of this obligation that an agent of defendant "promised plenty of heat." There was evidence that such heat was not furnished until November, 1954, and that in the meantime, the premises from time to time were unduly cold.

The court's conclusion that defendant was not diligent was in essence a finding of fact and is not reviewable under the circumstances here disclosed. *Davis v. Newburyport Savings Bank*, 311 Mass. 377, 382. *Cohen v. Santoianni*, 330 Mass. 187, 190, 191. *Fulton v. Belmont*, 333 Mass. 64.

The second issue presents a mixed question of law and fact, namely whether there was here an "interruption in the supply of heat." This involves an interpretation of the word "interruption." The Oxford Dictionary defines the verb "interrupt", in part, as follows: "To break in upon a process, action, or condition. To break the continuity of something. To cause to stop." A law dictionary definition is "The step legally requisite to stop the running of the period of prescription."

An interruption follows some activity or condition with which it interferes, such as conversation, playing a game, supplying service. The running of an easement is "interrupted." There must always be a pre-existing activity or condition to be interrupted. Otherwise there is nothing to interrupt.

The case before us does not involve an "interruption in the supply of heat." In the first instance, there was no heat. Defendant undertook to increase facilities. Assuming that she succeeded, this could hardly be considered an interruption within the meaning of the lease. It was not an interference. It was, if anything, an improvement in condition. An example of "interruption with the supply of heat" would be where a thunder storm or hurricane

disrupts electric service upon which household appliances, including heating, are dependent. This was the kind of thing we think the clause in the present lease contemplated.

Failure to supply adequate heat where no heat or insufficient heat has previously been furnished is not an "interruption." The court presumably took this view of the second issue and in our opinion was correct in so doing.

The third issue presents a straight question of law in the field of evidence relating more particularly to the purpose and scope of specifications. Specifications are provided for under G. L., c. 231 s. 70, and Rule 11 of the District Courts. The purpose of specifications is clearly stated in *Shea v. Crompton and Knowles Loom Works,* 305 Mass. 327, 328, 329. "The purpose of specifications is to give the judge and the opposing party knowledge of the nature and grounds of an action or the defense of an action."

There may not be a variance between the specifications and the evidence which will mislead the party seeking the specifications as was the case in *Shea v. Crompton and Knowles Loom Works,* supra. The cases cited by defendant on this issue are primarily cases where the specifications might well have misled the party seeking them, or failed to give him information to which he was entitled.

In the present case, no one was misled by the specifications. It is true that plaintiff, in giving specifications, did not claim among the items of damage loss of rental value. However, the items given bore directly on the matter of rental values. Defendant knew the rule of law governing damage in such a case as this because his fifth request for ruling correctly stated it. *McCormick v. Stowell,* 138 Mass. 431. There is no deception. Nothing essential to the defense is withheld. Defendant could hardly complain of plaintiff's failure to recite the very item which was the subject of defendant's own request for ruling.

The court properly overruled defendant's objection to the admission of evidence of rental value and of the cost of fuel. There being no prejudicial error in the findings and rulings, the report is to be dismissed.

Leo Gordon, for the plaintiff.

Samuel Shostack, for the defendant.